661 S.E.2d 99

**The STATE, Appellant**

**v.**

**John "Jack" M. STERLING, Respondent.**

**No. 26479.**

Supreme Court of South Carolina.

Heard March 19, 2008.

Decided May 5, 2008.

476

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Attorney General Jennifer D. Evans, and Assistant Attorney General Deborah R.J. Shupe, all of Columbia, for Appellant.

E. Bart Daniel and Matthew R. Hubbell, both of Charleston, for Respondent.

Chief Justice TOAL:

In this case, the State appeals from the trial court's order granting Respondent Jack Sterling's motion to exclude the testimony of four of the State's witnesses. We reverse.

### FACTUAL/PROCEDURAL BACKGROUND

In June 2003, following the financial collapse of Carolina Investors, Inc. ("CI") and HomeGold Financial, Inc. ("HGF"), the grand jury initiated an investigation into the collapse. Subsequently, after SLED requested an interview with Respondent,[1] Respondent contacted attorney Bill Bannister for legal advice. On July 30, 2003, Bannister accompanied Respondent to the SLED interview. During this same time period, SLED also conducted interviews of several other officers of CI and HGF, including Larry Owen, Anne Owen, Don Bobo, and Danny Sharpe, all of whom Bannister represented. On January 19, 2004, Respondent sent a letter to Bannister terminating his services.

---

1. Respondent served on both the CI and HGF Board of Directors.

On April 12, 2006, more than two years after firing Bannister, the grand jury indicted Respondent on two counts of securities fraud and one count of conspiracy. Respondent filed a motion to quash the indictment or, in the alternative, exclude the testimonies of Larry Owen, Anne Owen, Don Bobo, and Danny Sharpe (hereinafter "the witnesses") based on Bannister's purported conflict of interest after having represented all parties at the time of their SLED interviews. The trial court declined to quash the indictment, finding such a drastic remedy was inappropriate absent prosecutorial misconduct. However, the trial court found that Bannister's past representation of Respondent and the witnesses violated Respondent's Sixth Amendment right to counsel in that it created an actual conflict of interest. Therefore, the trial court granted Respondent's motion to exclude the witnesses' testimonies.

## STANDARD OF REVIEW

The Court is bound by the trial court's preliminary factual findings in determining the admissibility of certain evidence in criminal cases unless the findings are clearly erroneous or unless the trial court abused its discretion. *State v. Wilson*, 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001).

## LAW/ANALYSIS

As a primary matter, Respondent argues that this order is not immediately appealable. We disagree.

This Court has interpreted the appealability statute, S.C.Code Ann. § 14–3–330 (1976), to allow the immediate appeal of pre-trial orders which would significantly impair the prosecution of a criminal case. The witnesses to which the trial court's order pertained personally interacted with Respondent during the relevant time period and will be able to provide a first-hand account of what Respondent knew and his actions. Thus, their testimonies are critical to prove the charges against Respondent, and the suppression of their testimonies would significantly impair the State's case. Accordingly, we hold that the trial court's order is immediately appealable. *See State v. McKnight*, 287 S.C. 167, 168, 337 S.E.2d 208, 209 (1985) (holding that a pre-trial order granting the suppression of evidence which significantly impairs the

prosecution of a criminal case is directly appealable under S.C.Code Ann. § 14–3–330(2)(a) (1976)).

■ Turning to the merits of the appeal, the State argues that the trial court erred in excluding the testimonies because Respondent suffered no Sixth Amendment violation and because no actual conflict of interest existed. We agree.

■ The Sixth Amendment right to counsel attaches upon initiation of adversarial judicial proceedings and at all critical stages of a criminal trial. *Michigan v. Jackson,* 475 U.S. 625, 629, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). In order to prove a per se Sixth Amendment violation, the defendant must show that counsel acted under an actual conflict of interest. Stated differently, "prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

In our view, the trial court erred in presuming Respondent's rights were prejudiced. Significantly, Respondent's Sixth Amendment right had not attached at any point during Bannister's representation, as Respondent had not yet been indicted. *See State v. Council,* 335 S.C. 1, 15, 515 S.E.2d 508, 515 (1999) (noting that the Sixth Amendment right attaches only post-indictment, at least in the questioning/statement setting). At the time that Bannister represented Respondent, the State had not initiated any criminal proceedings against Respondent, and Respondent had not been indicted. In fact, Respondent fired Bannister more than two years before he was indicted. This Court has never found per se Sixth Amendment violations during the pre-indictment stage, and Respondent cites no authority to the contrary. *See State v. Gregory,* 364 S.C. 150, 612 S.E.2d 449 (2005) (finding a per se Sixth Amendment violation where attorney acted under an actual conflict of interest at trial); *Thomas v. State,* 346 S.C. 140, 551 S.E.2d 254 (2001) (finding a per se Sixth Amendment violation where attorney acted under an actual conflict of interest at the plea hearing). To the extent an attorney is acting under a conflict of interest in the pre-indictment stage, we think that

the actual conflict of interest must persist into the post-indictment stage before a court will presume prejudice. *See United States v. Tatum*, 943 F.2d 370, 380 (4th Cir.1991) (presuming prejudice where actual conflict adversely affected pretrial strategies as well as the defense at trial); *Hoffman v. Leeke*, 903 F.2d 280, 290 (4th Cir.1990) (holding defendant suffered a Sixth Amendment violation where counsel acted under a conflict of interest from the pre-indictment stage until the conclusion of defendants trial).

Not only did the representation terminate pre-indictment, but also Respondent failed to show Bannister operated under any actual conflict of interest. Bannister represented Respondent and the witnesses in the preliminary stages of the investigation before any criminal proceedings began. Thus, at that time, the witnesses' interests were not necessarily adverse to Respondent's interests. *See Mickens v. Taylor*, 535 U.S. 162, 175, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (recognizing that until a defendant shows that counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of a Sixth Amendment violation); *Fuller v. State*, 347 S.C. 630, 557 S.E.2d 664 (2001) (holding an actual conflict of interest occurs where an attorney owes a duty to a party whose interests are adverse to the defendant's interests). Given that Respondent failed to show that Bannister operated under an actual conflict of interest after criminal proceedings had begun, it is inappropriate to presume prejudice in this case.

■ If we were to hold that a pre-indictment conflict could pose a Sixth Amendment violation, we think Respondent must be able to demonstrate some way in which Bannister's representation prejudiced his rights,[2] which he cannot do. Bannister stated in his affidavit that Respondent never conveyed confidential information to him, and Respondent does not

---

**2.** That a defendant must show prejudice absent an actual conflict of interest is extremely important in preventing multiple defendants from frustrating prosecution efforts. In the instant case, for example, the trial court's ruling creates an incentive for possible future co-defendants who may take adverse positions in a criminal case to retain one attorney for any investigative proceedings, thereby "conflicting out" all of the possible co-defendants from testifying against any other defendant.

point to any evidence that Bannister disclosed privileged information to the witnesses. Furthermore, the record contains no evidence of prosecutorial misconduct. We note that Respondent is not without protections during trial. For example, should it appear that the witnesses will disclose privileged information during their testimonies, the trial court is free to hold a hearing *in camera* to determine the admissibility of such testimony and to craft protective orders or instructions where necessary.

As a practical matter, the trial court's remedy of excluding witness testimony based on a Sixth Amendment violation is somewhat puzzling. Typically, in cases involving a violation of the Sixth Amendment right to counsel, the defendant has suffered a violation of his right to counsel during the adjudication proceeding (i.e., a trial or a plea hearing), and the remedy granted as a result of the constitutional violation is a new trial. *See Staggs v. State*, 372 S.C. 549, 551, 643 S.E.2d 690, 692 (2007) (ordering a new trial where attorney simultaneously represented a defendant and the defendants father, mother, and brother, all of whom were charged as accessories after the fact). In the instant case, however, the trial court applied a broad remedy that effectively operated as an expansive version of the exclusionary rule, a remedy typically applied to Fourth Amendment violations. *See State v. Freiburger*, 366 S.C. 125, 131, 620 S.E.2d 737, 740 (2005) (recognizing that the exclusionary rule operates as a mechanism to enforce the Fourth Amendment prohibition against unreasonable searches and seizures). For such a rule to be the appropriate remedy in this case, we think several additional circumstances would need to be present, such as the former attorney intentionally conveying privileged information to other witnesses or to the State or some form of prosecutorial misconduct. While this conduct may implicate any number of constitutional rights, we are unaware of any jurisprudence analyzing such violations under the Sixth Amendment rubric.

Accordingly, we hold that Respondent suffered no Sixth Amendment violation of his right to counsel and that Respondent failed to show he was otherwise prejudiced by Bannister's representation. Therefore, we further hold that the trial court erred as a matter of law in granting Respondent's motion to exclude the witnesses' testimonies.

482

CONCLUSION

For the foregoing reasons, we reverse the trial courts order excluding the witnesses testimonies.

WALLER, PLEICONES, BEATTY, JJ., and Acting Justice E.C. BURNETT, III, concur.