494 S.E.2d 626

**Morgan Quincy SMITH, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

No. 24723.

Supreme Court of South Carolina.

Submitted Oct. 22, 1997.

Decided Dec. 15, 1997.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Teresa A. Knox, Columbia, for petitioner.

Assistant Appellate Defender M. Anne Pearce, of South Carolina Office of Appellate Defense, Columbia, for respondent.

TOAL, Justice:

The State has petitioned for a writ of certiorari, contesting the Post–Conviction Relief ("PCR") court's grant of relief to Morgan Quincy Smith on the basis of his attorneys' failure to advise him that burglary second degree is a violent offense. We reverse.

### FACTUAL/PROCEDURAL BACKGROUND

In June 1994, Smith was indicted on five counts of burglary second degree, four counts of grand larceny, three counts of accessory after the fact of burglary and grand larceny, three counts of conspiracy, and one count of grand larceny of a motor vehicle. Smith pled guilty to the second degree burglary, accessory after the fact, and grand larceny charges. He was sentenced to fifteen years for each count of second degree burglary, ten years for each count of accessory after the fact, and five years for each count of grand larceny. All of the sentences were to run concurrently. Smith did not appeal his convictions or sentence.

In late 1994, Smith filed a PCR application in which he alleged that he failed to understand the nature of his plea to

burglary under S.C.Code Ann. § 16–11–312 (Supp.1996).[1]  A PCR hearing was held at which Smith testified he had been informed by counsel that he could potentially receive 130 years for his offenses.  He stated, however, that he was not told whether the burglary offenses to which he was pleading guilty were violent or non-violent offenses.  At one point in the hearing, he stated that he would not have pled guilty to a violent charge because he did not do anything violent.  Smith knew he was pleading guilty to fifteen years to run concurrently and that he would have to serve a third of the sentence.

Smith's attorney Hugh Claytor ("Attorney") also testified at the PCR hearing.  He stated that he told Smith that burglary second degree carried a fifteen-year sentence and that the statutory minimum he would have to serve was one-third.  They never talked about the distinction between violent and non-violent offenses.  Attorney did believe that Smith was pleading to a non-violent charge, but he did not think it mattered.

Olin Purvis assisted Attorney in representing Smith.  Purvis testified that it was explained to Smith very clearly that he was facing fifteen-year sentences on the burglary charges that would be treated as mandatory one-third sentences, and Smith would be required to do one-third of the time.  Purvis stated that he did not raise the issue of whether the crime was violent and did not see any reason to do so.

The PCR court's order declares that Attorney had advised Smith about parole eligibility, but had not advised Smith that he was pleading guilty to a violent offense.  The order further states that there are consequences to pleading to a violent crime, including "treatment while in the Department of Corrections, [Smith's] eligibility for 'good time credits,' and the possibility of enhancement should he be convicted of a violent offense in the future."  Accordingly, the PCR court granted Smith a new trial.

---

1.  *See* S.C.Code Ann. § 16–11–312 ("Burglary in the second degree is a felony punishable by imprisonment for not more than fifteen years, provided, that no person convicted by burglary in the second degree shall be eligible for parole except upon service of not less than one-third of the term of the sentence.").

The State has petitioned for a writ of certiorari, contending that the PCR court erred in granting Smith a new trial on the basis of counsel's failure to advise him that burglary second degree is a violent offense.

## LAW/ANALYSIS

■ The State argues the PCR court erred in granting Smith relief. We agree. A guilty plea may not be accepted unless it is voluntarily and understandingly made. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In order for a defendant to knowingly and voluntarily plead guilty, he must have a full understanding of the consequences of his plea and of the charges against him. *Simpson v. State,* 317 S.C. 506, 455 S.E.2d 175 (1995). In *State v. Hazel,* 275 S.C. 392, 271 S.E.2d 602 (1980), this Court held that defendant's plea was not knowing because it was entered without an understanding of the mandatory punishment for the offense to which he was pleading. Accordingly, the plea was entered in ignorance of its direct consequence and was therefore invalid. Similarly, in *Dover v. State,* 304 S.C. 433, 405 S.E.2d 391 (1991), we held that the defendant's guilty plea was made in ignorance of its consequences where the trial judge never asked the defendant any factual questions, nor questioned him about the possibility of a severe sentence, and it was never established that the defendant understood the severity of the crimes or the sentences they carried.

■ In contrast, parole eligibility has been held to be a collateral consequence of sentencing of which a defendant need not be specifically advised before entering a guilty plea. *Griffin v. Martin,* 278 S.C. 620, 300 S.E.2d 482 (1983). However, if the defendant's attorney undertakes to advise the defendant about parole eligibility and gives erroneous advice, then the plea may be collaterally attacked. *See Hinson v. State,* 297 S.C. 456, 377 S.E.2d 338 (1989). Likewise, if the judge misinforms the defendant about parole eligibility, then the defendant is entitled to a new trial. *See Brown v. State,* 306 S.C. 381, 412 S.E.2d 399 (1991).[2] In reaching its holding in *Brown,* the Court stated:

---

2. *Hunter v. State,* 316 S.C. 105, 447 S.E.2d 203 (1994) limited *Brown's* holding. *Hunter* stated that a strict reading of *Brown* would seem to

The imposition of a sentence may have a number of collateral consequences, however, and a plea of guilty is not rendered involuntary in a constitutional sense if the defendant is *not* informed of the collateral consequences. Parole eligibility typically is a collateral consequence of sentencing about which a defendant need not be specifically advised before entering a guilty plea. This is because parole eligibility is not a matter within the jurisdiction of the trial court, but falls within the province of the Board of Probation, Parole, and Pardon Services.

*Brown,* 306 S.C. at 382–83, 412 S.E.2d at 400–01 (emphasis in original) (internal citations omitted).

The pivotal question in the present case is whether Smith should have been informed about the classification and consequences of burglary second degree as a violent crime. The resolution of this question depends, in turn, on whether the consequences of a violent crime are collateral.

Section 16–1–60 (Supp.1996) defines burglary second degree (S.C.Code Ann. § 16–11–312(B)) as a "violent crime." There are a number of consequences if defendant is convicted of a violent crime. Among these are his preclusion from the pretrial intervention program,[3] the supervised furlough program,[4] and the Shock Incarceration Program.[5] Other conse-

---

dictate that a guilty plea must be reversed for any misstatement of parole eligibility by a trial judge, even where the misstatement relates to the defendant's particularized situation, rather than the applicable law. *Hunter* declared that that is incorrect. Rather, erroneous parole evidence advice from the bench could, on certain facts mislead, a defendant to his detriment; however, it would be wholly impractical to maintain a rule that requires the automatic reversal of a guilty plea without something more. Where the trial judge merely explains the minimum criteria for parole eligibility as contained in the applicable statute, the fact that the defendant is not actually eligible for parole does not render his guilty plea involuntary or unknowing. *Id.* at 109, 447 S.E.2d at 205–06.

3. *See* S.C.Code Ann. § 17–22–50 (Supp.1996) (A person may not be considered for the pre-trial intervention program if he has been charged with any crime of violence as defined in Section 16–1–60.).

4. *See* S.C.Code Ann. § 24–13–710—720 (Supp.1996).

5. *See* S.C.Code Ann. § 24–13–1310(1)(c) (Supp.1996).

quences include tougher standards for parole,[6] limitations on furlough [7] and work release,[8] and unavailability of educational credits.[9] Additionally, one convicted of a violent crime may not become licensed as an embalmer or funeral director [10] or registered professional engineer, associate professional engineer, or professional land surveyor.[11]

We find that none of the above consequences are of greater significance than parole eligibility. Because we have deemed parole eligibility to be a collateral consequence, then, *a fortiori*, the above-named consequences are collateral as well. As such, defendants need not be affirmatively informed about them. *See Brown*, 306 S.C. at 382–83, 412 S.E.2d at 400 ("The imposition of a sentence may have a number of collateral

6. *See* S.C.Code Ann. § 24–21–30(B) (Supp.1996) ("The board may grant parole to an offender who commits a violent crime as defined in Section 16–1–60 which is not included as a 'no parole offense' as defined in Section 24–13–100 on or after the effective date of this section by a two-thirds majority vote of the full board. The board may grant parole to an offender convicted of an offense which is not a violent crime as defined in Section 16–1–60 or a 'no parole offense' as defined in Section 24–13–100 by a unanimous vote of a three-member panel or by a majority vote of the full board."); S.C.Code Ann. § 24–21–640 (Supp.1996) ("The board must not grant parole nor is parole authorized to any prisoner serving a sentence for a second or subsequent conviction, following a separate sentencing for a prior conviction, for violent crimes as defined in Section 16–1–60."); *see also* S.C.Code Ann. § 24–21–645—650 (Supp.1996).

7. *See* S.C.Code Ann. § 24–3–210(D) (Supp.1996) (person convicted of a violent crime under section 16–1–60 may not be extended the benefits of furlough, unless the victim, the law enforcement agency, and the solicitor recommend furlough).

8. *See* S.C.Code Ann. § 24–13–650 (Supp.1996) (precluding offender of a violent offense from being released back into the community in which he committed the offense, except where victim, law enforcement agency, and solicitor all agree to recommend participation of offender in program).

9. *See* S.C.Code Ann. § 24–13–230(F) (Supp.1996) ("The educational credit provided for in this section, is not available to any individual convicted of a violent crime as defined in Section 16–1–60.").

10. *See* S.C.Code Ann. § 40–19–100(1)(A)(ii) & (B)(ii) (Supp.1996).

11. *See* S.C.Code Ann. §§ 40–22–10(19), –190(a), –195(A), –220, & –260 (Supp.1996).

consequences, however, and a plea of guilty is not rendered involuntary in a constitutional sense if the defendant is not informed of the collateral consequences.").

Moreover, *Brown* reasoned that parole eligibility typically is a collateral consequence of sentencing because it is not a matter within the jurisdiction of the trial court, but falls within the province of the Board of Probation, Parole, and Pardon Services. *Brown*, 306 S.C. at 383, 412 S.E.2d at 400–01. This reasoning is applicable here inasmuch as none of the consequences discussed above are matters within the jurisdiction of the trial court.

Because the consequences of a violent crime are collateral, Smith's guilty plea is not rendered involuntary due to counsel's failure to inform him of the consequences of a violent crime conviction. Smith was advised about the severity of the offense, about his potential sentence, and that he had to serve a minimum of one-third of his sentence. At the guilty plea hearing, Smith responded to the court that he understood the charges he was facing and that he could be sentenced to a maximum sentence of 130 years. Understanding these things, he still wanted to plead guilty.

Although Attorney incorrectly believed that the burglary charge to which Smith was pleading was a non-violent offense, and Attorney did not understand what effect violent versus non-violent would have on parole eligibility, there was no evidence presented that Attorney advised Smith about these matters. Because the information that Smith *did* receive was sufficient and correct, he has no basis for relief.

CONCLUSION

Based on the foregoing, the grant of PCR is REVERSED.

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.