665 S.E.2d 596

**Bruce Randall MILLER, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 26523.**

Supreme Court of South Carolina.

Submitted April 16, 2008.

Decided July 28, 2008.

Rehearing Denied Aug. 28, 2008.

Appellate Defender Robert M. Pachak, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Karen Ratigan, of Columbia, for Respondent.

Justice BEATTY:

In this case, the post-conviction relief (PCR) court found trial counsel was not ineffective in establishing Bruce Randall Miller's defense of third-party guilt for the charge of armed robbery. This Court granted certiorari to review the PCR court's decision. Because Miller's sole defense was mistaken identity and third-party guilt, we conclude there is no probative evidence to support the PCR court's findings of fact and conclusions of law regarding trial counsels effectiveness. Therefore, we reverse the decision of the PCR court and grant Miller relief with respect to his armed robbery conviction.

## FACTUAL/PROCEDURAL HISTORY

Around 9:00 a.m. on December 9, 2001, James Holden stopped by the Li'l Cricket convenience store on White Horse Road in Greenville to use the pay phone. As Holden was getting back into his truck, he was approached by an African–American male asking for directions to Interstate 85. After Holden motioned in the direction of I–85, the man pointed a gun at him and demanded his wallet. When the man realized that Holden did not have any money in his wallet, he ordered Holden to empty his pockets. Holden then turned over $106 in cash. According to Holden, the man took the money and drove off in a "bluish purple" colored vehicle. Holden followed the vehicle until the man pulled into a nearby apartment complex. During the pursuit, Holden was able to take down the license plate number.

Holden returned to the convenience store and called police to report the robbery. Stacy Snider, a deputy with the Greenville County Sheriff's Department, responded to the scene. Holden described the suspect as a medium build, five-foot-ten inch, 170 pound African–American male with a "Fu Manchu mustache," similar to a goatee. In terms of clothing, Holden claimed the suspect was wearing a white ski hat, a black nylon jacket, a black shirt, dark pants, and dark tennis shoes. He further stated the suspect was wearing "a necklace or a gold braid or something made into the shirt." Holden also described the suspect's vehicle and gave the license plate number to Deputy Snider. Using this information, Deputy

Snider determined that the vehicle, a Kia Sephia, was registered to Stephanie Pauling.

On December 12, 2001, Antonio Bailey, an investigator with the Greenville County Sheriffs Department, continued the investigation by contacting Holden. Based on Holden's written statement and the vehicle registration, Investigator Bailey interviewed Stephanie Pauling, Miller's then girlfriend, and her aunt, Brenda Johnson, who lived at the address where the vehicle had been registered. As a result of this investigation, Investigator Bailey compiled a photographic lineup and presented it to Holden on December 18, 2001. At that time, Holden selected Miller's photograph and positively identified him as the man who had robbed him. The next day, Investigator Bailey arrested Miller. The Greenville County jail intake form listed Miller as five-feet-eight inches tall and weighing 130 pounds.

After a Greenville County grand jury indicted him, Miller was tried for armed robbery. In addition to Holden and the investigating officers, the State presented Stephanie Pauling as its primary witness to establish that Miller had access to her vehicle at the time of the armed robbery. Pauling testified she began dating Miller in September 2001 and eventually moved in with him. She claimed that Miller often borrowed her car and that he drove off in the vehicle on December 2, 2001. According to Pauling, she did not see Miller until one week later. At that time, Miller told her that she could find her car on Poinsette Highway where he had left it. Because Miller claimed he had lost her car keys, Pauling arranged to meet with her aunt, Brenda Johnson, who gave her the spare set of car keys in order that she could retrieve the car. When questioned about the specifics of the armed robbery, Pauling testified that Miller owned a handgun and that Miller was wearing a gold medallion on the day of the robbery.

On cross-examination, Miller's trial counsel brought out that Pauling was currently charged with three armed robberies in Greenville. With respect to one of these robberies, Pauling admitted that she initially implicated Miller, but ultimately changed her statement and identified Derrick Miller, Bruce Miller's nephew, as a participant. During this portion of cross-examination, the State objected as trial counsel began to

question Pauling about Derrick Miller and his involvement in the robberies. Outside the presence of the jury, trial counsel inquired whether he would be permitted to question Pauling regarding the specifics of her three armed robbery charges in an attempt to establish that Derrick Miller, not Bruce Miller, was the person who robbed Holden. The trial judge sustained the State's objection and trial counsel concluded his cross-examination of Pauling.

Following the bench conference, trial counsel proffered his cross-examination of Pauling. During the proffer, Pauling testified that Derrick Miller was a co-defendant in all three armed robberies with which she had been charged. She also described Derrick Miller as an African–American male, who was approximately five-feet-seven inches tall, weighed 170 pounds, and had facial hair over his lip and under his chin. At the conclusion of the proffer, trial counsel contended this testimony was relevant as evidence of third-party guilt. Specifically, he stated that he wanted to establish before the jury that another individual with similar physical characteristics to Bruce Miller had access to Pauling's vehicle and had been involved in recent armed robberies in Greenville using the same vehicle during the same time period. The trial judge then permitted trial counsel to recall Pauling and question her again outside the presence of the jury. During this second proffer, Pauling acknowledged that her car was used during each of the three robberies for which she and Derrick Miller were charged as well as the one for which Bruce Miller was charged.

After denying Miller's motion for a directed verdict and a brief recess, the trial judge returned to the courtroom and informed the attorneys that he had reversed his earlier ruling. The judge stated that he would permit Miller's counsel to question Pauling regarding Derrick Miller's physical characteristics and that Pauling would be "testifying consistent with the proffer."

During her cross-examination before the jury, Pauling described Derrick Miller as an African–American male who was approximately five-feet-seven inches tall and weighed 170 pounds. She also acknowledged that he has a "Fu Manchu mustache." In reply, the State recalled Holden as a witness

who again positively identified Bruce Miller as the man who robbed him.

Miller did not testify or present any witnesses on his behalf. After the jury convicted him of armed robbery, the trial judge sentenced him to eighteen years imprisonment.

Miller appealed his conviction to the Court of Appeals. After the Court of Appeals affirmed his conviction,[1] Miller filed an application for post-conviction relief. The State filed a return and requested an evidentiary hearing.

At the hearing, Miller's PCR counsel called Bruce Miller and trial counsel as witnesses. Miller maintained that his nephew, Derrick Miller, committed the armed robbery for which he was charged. Miller claimed his trial counsel was ineffective in that he failed to: (1) obtain an expert witness on eyewitness identification testimony; and (2) adequately present the third-party guilt of his nephew, Derrick Miller. In terms of third-party guilt, Miller believed that trial counsel should have established that his nephew had similar physical features and had been charged with three armed robberies in Greenville that occurred around the time Holden was robbed. Additionally, Miller claimed that Derrick used Pauling's vehicle and owned a handgun similar to the one that Holden claimed to have seen during the robbery.

Trial counsel admitted that he erred in failing to bring out through Pauling's cross-examination that her car was used and a similar handgun was used in the robbery of Holden as well as the other three armed robberies for which she and Derrick Miller were charged. Because Miller's sole defense was misidentification and third-party guilt, trial counsel conceded that he "missed [his] opportunity" during Pauling's testimony to specifically tie in the gun and vehicle used in all of the robberies. By means of explanation, trial counsel stated he was remiss in not connecting the handgun and Pauling's vehicle because he was caught off guard when the trial judge reversed his initial ruling.

At the conclusion of the hearing, the PCR court denied Miller's application for post-conviction relief. Although he

---

1. *State v. Miller*, Op. No. 2004–UP–620 (S.C. Ct.App. filed Dec. 13, 2004).

acknowledged that it was a "close case," the court found Miller did not meet his burden of proof to warrant relief. In a written order, the PCR court affirmed his oral ruling and dismissed Miller's application. Specifically, the court held that Miller did not meet his burden of establishing error or prejudice regarding how trial counsel failed to effectively handle the following issues: (1) eyewitness identification; and (2) third-party guilt. In terms of third-party guilt, the court found that "trial counsel was allowed to present a third party guilt defense at trial. This Court finds that trial counsel's hindsight admission regarding his failure to ask Pauling (during the second cross-examination) about the similar car and gun does [not] operate to satisfy the Applicant's burden of proving error."

This Court granted Miller's petition for certiorari to review the PCR court's denial of his application for post-conviction relief.

## DISCUSSION

■■ Miller asserts the PCR court erred in failing to find trial counsel was ineffective in not cross-examining Stephanie Pauling regarding similar armed robberies allegedly committed by Derrick Miller. Because his entire defense rested on mistaken identity and third-party guilt,[2] Miller contends his counsel's ineffectiveness was prejudicial and warranted a reversal of his conviction. We agree.

---

2. In terms of third-party guilt, this Court has imposed strict limitations on its admissibility. *State v. Mansfield*, 343 S.C. 66, 81, 538 S.E.2d 257, 265 (Ct.App.2000). "Evidence offered by a defendant as to the commission of the crime by another person is limited to facts which are inconsistent with the defendant's guilt." *Id.* "The evidence must raise a reasonable inference as to the accused's innocence." *Id.* Recently, after Miller's trial, our United States Supreme Court clarified the above-outlined rule regarding the admission of third-party guilt in *Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006). *Holmes* essentially permits a defendant to introduce evidence of third-party guilt regardless of the strength of the State's case if the evidence offered by the accused as to the commission of the crime by another person is limited to such facts as are inconsistent with his own guilt and that raise a reasonable inference or presumption as to his own innocence. *Holmes*, 547 U.S. at 328–29, 126 S.Ct. 1727.

A defendant has the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Ard v. Catoe,* 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007), *cert. denied,* —— U.S. ——, 128 S.Ct. 370, 169 L.Ed.2d 247 (2007).

In a PCR proceeding, the applicant bears the burden of establishing that he is entitled to relief. *Caprood v. State,* 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000). In order to prove that counsel was ineffective, the PCR applicant must show that: (1) counsel's performance was deficient; and (2) there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Ard,* 372 S.C. at 331, 642 S.E.2d at 596. "Furthermore, when a defendant's conviction is challenged, 'the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland v. Washington,* 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

"This Court gives great deference to the post-conviction relief (PCR) court's findings of fact and conclusions of law." *Dempsey v. State,* 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005). We will uphold the findings of the PCR court when there is any evidence of probative value to support them. *Suber v. State,* 371 S.C. 554, 558–59, 640 S.E.2d 884, 886 (2007). However, this Court will reverse if there is no probative evidence to support the PCR court's findings or the decision is controlled by an error of law. *Id.*; *Pierce v. State,* 338 S.C. 139, 145, 526 S.E.2d 222, 225 (2000).

Although we are cognizant of our deferential standard of review, we find there is no probative evidence to support the PCR court's findings of fact and conclusions of law regarding trial counsel's effectiveness. We believe the record established that trial counsel's performance was deficient and that,

but for counsel's error, there was a reasonable probability that the result of Miller's trial would have been different.

The State established the charge of armed robbery against Bruce Miller based on a single eyewitness. Both trial counsel and Miller maintained that the defense theory was misidentification and third-party guilt. In terms of misidentification, trial counsel failed to call an expert witness to testify regarding eyewitness identification testimony. Thus, the key defense was third-party guilt.

In view of this limited defense, it was crucial for trial counsel to elicit testimony from Pauling that showed the similarities between the armed robberies for which she and Derrick Miller were charged and the one for which Bruce Miller was charged. Based on the proffer of Pauling's testimony and the transcript from the PCR hearing, it is clear that trial counsel could have established Derrick Miller's third-party guilt by showing that Pauling's vehicle was used as the "get away" car in each of the robberies and that a similar handgun was used.

Although trial counsel, through Pauling's testimony, was able to establish a physical description of Derrick Miller, this was not sufficient to adequately establish a defense of third-party guilt. A review of Holden's testimony reveals that he described the robber as an African–American male who was approximately five-feet-ten inches tall and weighed 170 pounds. He also described the robber's facial hair as a "Fu Manchu mustache" or "goatee." Significantly, this description is akin to Derrick Miller's physical features rather than Bruce Miller's. Additionally, Pauling's credibility was questionable at best given she initially implicated Bruce Miller in one of the other three armed robberies until she became aware that he could not have been involved because he was in jail at the time of the crime. Inferentially, Pauling could have been "covering" for Derrick Miller for Holden's armed robbery as she did when she falsely identified Bruce Miller in another robbery.

Furthermore, trial counsel conceded he was remiss in failing to adequately cross-examine Pauling regarding the specifics of the other armed robberies. Counsel attempted to elicit specific testimony of third-party guilt during the proffer of Pauling's testimony; however, he failed to do so in front of the jury

when given an opportunity by the trial judge to question her further regarding the use of her car and a similar gun during the charged robberies.

Based on the foregoing, we conclude the record is devoid of any probative evidence to support the PCR court's decision to dismiss Miller's application. Clearly, both the trial judge and the PCR court recognized there was evidence of third-party guilt. Specifically, the trial judge gave trial counsel the opportunity to establish this defense before the jury. Moreover, the PCR court found that "trial counsel clearly pursued the defense of third-party guilt at trial." Yet, the evidence established that counsel was deficient in adequately cross-examining Pauling regarding the specifics of the other three armed robberies for which she and Derrick Miller were charged as well as pointing out that Derrick Miller's physical features were similar to the robber as described by Holden. Because Miller's sole defense was mistaken identity and third-party guilt, he was prejudiced by trial counsel's error and entitled to post-conviction relief.

## CONCLUSION

For the foregoing reasons, we reverse the PCR court's decision and grant relief as to Miller's armed robbery conviction.

**REVERSED.**

MOORE and WALLER, JJ., concur. TOAL, C.J., dissenting in a separate opinion in which PLEICONES, J., concurs. PLEICONES, J., dissenting in a separate opinion in which TOAL, C.J., concurs.

Chief Justice TOAL dissenting:

I join in Justice Pleicones' dissent. In my opinion, this evidence does not meet the threshold for third-party guilt.

In my view, testimony that Pauling and Derrick Miller committed other robberies using Pauling's vehicle and that a similar gun was used in all four robberies is not evidence that is inconsistent with Petitioner's guilt. *State v. Beckham*, 334 S.C. 302, 317, 513 S.E.2d 606, 614 (1999) (recognizing that third-party guilt evidence is limited to facts which are incon-

sistent with the defendant's guilt). Furthermore, I agree with Justice Pleicones that Petitioner failed to show he was prejudiced by trial counsel's alleged failure to adequately present this evidence. The jury heard testimony from Pauling that she pled guilty to an armed robbery that she committed with Derrick Miller in which she drove the "get-away" vehicle.

Furthermore, in my view, Petitioner failed to show trial counsel was ineffective in failing to call an expert on witness identification. Petitioner did not offer any such expert at his PCR hearing, and thus, he failed to meet his burden of proving prejudice. *See Lorenzen v. State*, 376 S.C. 521, 530, 657 S.E.2d 771, 776–77 (2008) (holding that the PCR applicant failed to show he was prejudiced by trial counsel's failure to call an eyewitness identification expert because "it is merely speculative that these allegedly favorable expert witnesses would have aided in his defense.").

For these reasons, I believe there is evidence to support the PCR court's findings, and I would affirm the order denying Petitioner relief.

PLEICONES, J., concurs.

Justice PLEICONES dissenting:

I respectfully dissent and would affirm the post-conviction relief (PCR) judge's finding that petitioner's trial counsel was not ineffective in failing to adequately present evidence of third-party guilt. *E.g., Ard v. Catoe*, 372 S.C. 318, 642 S.E.2d 590 (2007) (PCR findings must be upheld where supported by any evidence of probative value in the record).

Under South Carolina's third-party guilt evidence rule:

Evidence offered by accused as to the commission of the crime by another person must be limited to such facts as are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect that than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible.... [B]efore such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to

point out such other person as the guilty party. *State v. Gregory*, 198 S.C. 98 at 104–105, 16 S.E.2d 532 at 534–535 (1941) (quoting 16 C.J., Criminal Law § 1085, p. 560 (1918) and 20 Am.Jur., Evidence § 265, p. 254 (1939); footnotes omitted).

Cited in *Holmes v. South Carolina*, 547 U.S. 319, 328, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006).[3]

At the outset, I must express reservations whether the third-party guilt evidence proffered by petitioner at trial met the threshold for admissibility. In my view, Stephanie Pauling's testimony did little more than raise a conjectural inference that Derrick Miller, rather than petitioner, may have robbed James Holder. *State v. Gregory, supra.*

In any case, there is evidence in the record to support the PCR judge's finding that trial counsel was not deficient in casting suspicion on Derrick through his cross-examination of Pauling. The majority points to two facts which trial counsel failed to elicit to find trial counsel ineffective: 1) that Pauling's car was used in her and Derrick's armed robberies and 2) that a similar gun was used in all four robberies. In my view, trial counsel's failure to cross-examine Pauling about these two "similarities" was not deficient nor was petitioner prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (defendant alleging trial counsel was ineffective must establish both deficient performance and resulting prejudice).

It appears that Pauling testified for the State in petitioner's trial as part of an understanding that, following her testimony, she was to be permitted to plead down her three armed robbery charges to three counts of accessory after the fact. In those three cases, Pauling was alleged to have been the getaway car driver while two codefendants (one Derrick) robbed or attempted to rob convenience stores and a fast food restaurant. While Pauling did not explicitly testify that she was driving her car during these three crimes, there was no

---

3. In *Holmes,* the United State Supreme Court found unconstitutional a variant of South Carolina's third-party guilt rule which permitted strong evidence of guilt (especially forensic) to trump the defendant's right to present third-party guilt evidence.

suggestion that she was driving any other vehicle.[4]  The testimony focused on only this automobile, as did the attorneys' closing arguments.  In my opinion, trial counsel's failure to specifically question Pauling about the car used in the armed robberies in which she was the getaway driver was not deficient, nor was petitioner prejudiced by this omission since it was clear to the jury that the same car was involved in all four incidents.  *Strickland v. Washington, supra.*

The majority also holds trial counsel's failure to exploit the similarities between the gun used to rob Holder and the gun used in the three other armed robberies was ineffective.  During her *in camera* trial testimony, however, Pauling stated that the gun used in the robberies in which she participated "didn't look like the other one."  In my opinion, counsel cannot be deemed ineffective for failing to present evidence at trial through Pauling of the guns' similarities.

Having concluded that there is evidence of probative value in the record which supports the findings of the PCR judge, I would affirm the order denying petitioner a new trial.  *Ard v. Catoe, supra.*

TOAL, C.J., concurs.

---

4.  This is especially so in light of Pauling's testimony that only she, her aunt, and petitioner were permitted to drive the car, and evidence that her participation in the three robberies was motivated, at least in part, by the fact she had just lost her job and was unable to make her car payments.