743 S.E.2d 860

**David M. GRAHAM, Jr., Appellant,**

v.

**WELCH, ROBERTS AND AMBURN, LLP and Russell Patrick Welch, Respondents.**

Appellate Case No. 2012–209026.

**No. 5141.**

Court of Appeals of South Carolina.

Heard Feb. 13, 2013.

Decided June 12, 2013.

Bryan D. Caskey and Cantzon Foster, II, both of Foster Law Offices, LLC, of Columbia, for appellant.

Ronald L. Richter, Jr. and Eric Steven Bland, both of Bland Richter, LLP, of Charleston, for respondents.

WILLIAMS, J.

David M. Graham, Jr. ("Graham") appeals the circuit court's grant of summary judgment to Welch, Roberts and Amburn, LLP, and Russell Patrick Welch (collectively, "WRA") based on its finding that Graham's claims were barred by the applicable statute of limitations. Graham contends the circuit court erred in granting summary judgment when conflicting evidence existed as to when Graham knew or should have known he had a cause of action against WRA. We affirm.

**FACTS/PROCEDURAL HISTORY**

Russell Patrick Welch ("Welch") is a partner at the Charleston accounting firm of Welch, Roberts and Amburn, LLP. In 2005, Graham hired WRA to perform certain accounting and tax services.

On July 5, 2005, Graham received a notice of tax liability stating that he owed $4,296.49 in unpaid taxes to the State of New York. On October 13, 2005, Graham issued a check to WRA for $4,296.49 believing the funds would be used to

satisfy his outstanding tax liability. Graham included instructions on the face of the check to "Post to Account: DM Graham."

On November 28, 2005, WRA issued an invoice to Graham "For Services Rendered Through October 31, 2005" in the amount of $6,656.00. This invoice included four line item descriptions of the services performed by WRA; none of these descriptions indicate a payment was made for the tax liability to the State of New York. Instead, this invoice reflected a credit towards the service charges for $4,296.49, leaving a balance owed in the amount of $2,359.51. On December 30, 2005, Graham issued a check made payable to WRA for $2,359.51. This check Graham included the same instruction on the face of the check to "Post to Account: DM Graham."

On November 28, 2008, Graham received notice from his bank that the New York State Department of Taxation and Finance had levied his account to collect unpaid taxes.

On March 9, 2011, Graham commenced this action, alleging the following causes of action against WRA: professional negligence, breach of fiduciary duty, fraud, negligent misrepresentation, conversion, and unjust enrichment. With his complaint, Graham attached an affidavit from Michael Goldson, Graham's new accountant, detailing the alleged actions of WRA, which he believed amounted to professional negligence. On May 24, 2011, WRA answered this complaint, denying any allegations of misconduct and asserting several defenses, including the statute of limitations.

On June 24, 2011, WRA moved for summary judgment on the ground that Graham knew, or should have known, of his claims as early as November 2005 and the action was therefore barred by the applicable statute of limitations.

On October 26, 2011, Graham filed an affidavit detailing his version of the events that led to this lawsuit. In this affidavit, Graham states that he "agreed to send $4,296.49 to [WRA] and for [WRA] to pay the Tax Penalty on [his] behalf." Graham explained, "At the time[,] it was not uncommon for [WRA] to pay expenses on [his] behalf with funds [Graham] provided...." Graham also stated that "[o]n or about April 20, 2010," his bank confirmed that WRA deposited the funds he believed were used to pay his taxes into WRA's account, and "[t]his was the first time [he] knew that a cause of action

related to the failure to pay the tax liability might exist against [WRA]."

On October 28, 2011, the circuit court heard WRA's motion for summary judgment. In addition to the pleadings, the court considered Graham's affidavit, Goldson's affidavit that accompanied the complaint, and an affidavit submitted by Welch at the hearing that detailed his account of the story.

On January 17, 2012, the circuit court issued an order granting WRA's motion for summary judgment. In this order, the circuit court found that because Graham had received the November 28 invoice reflecting that Graham's payment of $4,296.49 had been applied towards services rendered and not towards his tax liability, Graham knew or should have known his causes of action against WRA existed at that time. Accordingly, the circuit court concluded that "more than three years had passed since [Graham] first knew or should have known" about his claims, and, as a result, his claims were now "barred by the expiration of the statute of limitations." This appeal followed.

## STANDARD OF REVIEW

"An appellate court reviews the granting of summary judgment under the same standard applied by the [circuit] court under Rule 56(c), SCRCP." *Bovain v. Canal Ins.*, 383 S.C. 100, 105, 678 S.E.2d 422, 424 (2009). Rule 56(c) provides a circuit court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Rule 56(c), SCRCP). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Hancock v. Mid–South Mgmt. Co.*, 381 S.C. 326, 329–30, 673 S.E.2d 801, 802 (2009).

## LAW/ANALYSIS

Graham contends his October 26 affidavit creates conflicting evidence regarding when he knew or should have known of the existence of his cause of action; therefore, he argues the circuit court erred in granting summary judgment. We disagree.

The applicable statute of limitations for Graham's causes of action is three years. *See* S.C.Code Ann. § 15–3–530(5) (Supp.2012) (stating the statute of limitations for "an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law" is three years). The "discovery rule" applies to actions brought under section 15–5–530(5). *See* S.C.Code Ann. § 15–3–535 (Supp.2012); *Santee Portland Cement Co. v. Daniel Int'l Corp.*, 299 S.C. 269, 272, 384 S.E.2d 693, 695 (1989), *overruled on other grounds by Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors Div. of Unidynamics Corp.*, 319 S.C. 556, 462 S.E.2d 858 (1995) ("Section 15–3–535 extended the 'discovery rule' to actions governed by § 15–3–530(5).").

■ According to "the discovery rule, the statute of limitations begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." *True v. Monteith*, 327 S.C. 116, 119, 489 S.E.2d 615, 616 (1997). "We have interpreted the 'exercise of reasonable diligence' to mean that the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on *notice* that a claim against another party might exist." *Dean v. Ruscon Corp.*, 321 S.C. 360, 363–64, 468 S.E.2d 645, 647 (1996). In *Bayle v. South Carolina Department of Transportation*, this court stated:

> The date on which discovery of the cause of action should have been made is an objective, rather than subjective, question. In other words, whether the particular plaintiff actually knew he had a claim is not the test. Rather, courts must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist.

344 S.C. 115, 123, 542 S.E.2d 736, 740 (Ct.App.2001) (internal citations omitted).

■ However, when conflicting evidence exists on the issue of when a claimant knew or should have known that a cause of action existed, the issue becomes one for a jury to decide. *See Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320,

338, 534 S.E.2d 672, 681 (2000) ("[T]he determination of the date the statute [of limitations] began to run in a particular case [is a question] of fact for the jury when the parties present conflicting evidence."); *Maher v. Tietex Corp.*, 331 S.C. 371, 377, 500 S.E.2d 204, 207 (Ct.App.1998) ("The jury must resolve conflicting evidence as to whether a claimant knew or should have known he had a cause of action.").

■ The resolution of this case hinges on when the three-year statute of limitations began to run. Graham contends the first time he knew or could have known about the existence of claims against WRA was in 2008 when the state of New York levied his account. Graham further argues his October 28 affidavit demonstrates a course of dealing between the parties that creates conflicting testimony regarding whether he knew or should have known that his tax liability with New York was unpaid. According to Graham, "this course of dealing would lead a reasonable person to believe that the tax liability had been paid by [WRA], and it would not be until April 29, 2008, that a person of reasonable knowledge would conclude that the tax liability had not been satisfied. . . ."

However, we find that the invoice provided to Graham on November 28, 2005, would put "a reasonable person of common knowledge and experience" on notice that the funds had not been applied towards the outstanding tax liability and had instead been applied towards WRA's service charge. The invoice clearly indicates in its heading that it is billing "[f]or [s]ervices [r]endered [t]hrough October 31, 2005." Additionally, the bill shows a beginning balance of "-$4,296.49," which is the exact amount of the check issued by Graham to pay his New York tax liability. The descriptions of the services provided do not mention the New York tax liability. The only mention of New York in the brief descriptions shows that WRA conducted "[r]esearch [on] penalty notices from South Carolina and New York regarding prior year balances due."

We agree that Graham's affidavit creates a course of dealing that would lead a reasonable person to expect that Graham's check in the amount of his tax liability would be used to satisfy that liability. Viewing this evidence in the light most favorable to Graham, we find a reasonable person in his position would be justified in believing the funds were used in this way immediately following his delivery of a check for $4,296.49.

However, upon receipt of the invoice showing that exact amount being applied towards "services rendered," a reasonable person would then be on notice that their previous assumption was no longer valid. Viewing all inferences that can be reasonably drawn from the evidence in the light most favorable to Graham, we find that the invoice provides notice to "a reasonable person of common knowledge and experience" that the money provided by Graham was not used to satisfy his tax liability with the state of New York. Therefore, the statute of limitations would have begun to run, at the latest, on December 30, 2005, the date when Graham paid the remaining balance from the invoice.

Accordingly, we find the applicable statute of limitations on all of Graham's causes of action had run, and the circuit court properly granted WRA's motion for summary judgment.

## CONCLUSION

Based on the foregoing, the order of the circuit court is **AFFIRMED.**

HUFF and KONDUROS, JJ., concur.