**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Kamala Creighton, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2012-213667

---

Appeal From Dorchester County
Carmen T. Mullen, Circuit Court Judge

---

Unpublished Opinion No. 2016-UP-309
Heard March 16, 2016 – Filed June 22, 2016

---

**REVERSED AND REMANDED**

---

Bobby G. Frederick, of Frederick Law Office, of Myrtle Beach, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General Megan Harrigan Jameson, both of Columbia, for Respondent.

---

**PER CURIAM:**  In this post-conviction relief (PCR) action, Kamala Creighton, a Jamaican citizen living in the United States, argues the PCR court erred in dismissing her PCR application because (1) her PCR application was timely filed

pursuant to section 17-27-45(C) of the South Carolina Code (2014) and (2) plea counsel rendered ineffective assistance by giving her incorrect advice about the immigration consequences of her guilty plea. We reverse and remand.

## II. FACTS/PROCEDURAL HISTORY

A grand jury indicted Creighton for trafficking in marijuana between ten and one hundred pounds. In July 2007, Creighton pled guilty to possession with intent to distribute marijuana, and the plea court sentenced her to three years' imprisonment, suspended upon the service of two years' probation. Creighton did not file a direct appeal.

In October 2011, Creighton filed a PCR application, alleging plea counsel was ineffective (1) for failing to advise her of the immigration consequences of her guilty plea, as required by *Padilla v. Kentucky*[1]; and, in the alternative, (2) for advising her incorrectly about the immigration consequences of her guilty plea under pre-*Padilla* law.[2] At the PCR hearing, Creighton testified she first learned that her conviction negatively affected her immigration status on April 5, 2011, when she met with an immigration attorney to renew her green card and pursue citizenship. Creighton stated her immigration status was her "main concern from day one," and she discussed the issue with plea counsel before pleading guilty. According to Creighton, plea counsel advised her that pleading guilty would not expose her to deportation. Creighton testified she would have proceeded to trial instead of pleading guilty had she known that pleading guilty would affect her immigration status. Creighton stated her green card would expire on September

---

[1] 559 U.S. 356, 368−69 (2010) (holding plea counsel's performance was deficient for failing to advise the defendant that his guilty plea subjected him to automatic deportation).

[2] Pre-*Padilla* South Carolina case law provides plea counsel is not required to specifically advise a defendant of a collateral consequence of a plea, but when counsel undertakes to give advice on a collateral consequence and that advice is erroneous, grounds exist for PCR. *See Smith v. State*, 329 S.C. 280, 283, 494 S.E.2d 626, 628 (1997); *Hinson v. State*, 297 S.C. 456, 458, 377 S.E.2d 338, 339 (1989) (finding plea counsel ineffective for giving incorrect advice regarding parole eligibility).

11, 2013, and she would be unable to renew it because of her conviction. Creighton testified she was advised that she would be subject to deportation if she tried to renew her green card.

Plea counsel testified his main concern when representing Creighton was preventing her from being incarcerated. He testified his clients are primarily United States citizens and, based on his limited knowledge of immigration law at the time, he advised Creighton that pleading guilty would not affect her immigration status. Plea counsel confirmed Creighton was very concerned about deportation due to her pending charge.

The PCR court certified attorney Kana Johnson as an expert in "consequences in immigration law." Johnson testified a non-citizen criminal defendant faces deportation if convicted of either an "aggravated felony" or a crime of "bad moral character." Johnson testified Creighton's conviction fell under both categories. She further testified that, because of Creighton's conviction, any attempt to renew her green card or apply for citizenship would initiate the deportation process.

The PCR court found Creighton failed to show that by exercising reasonable diligence she could not have discovered the adverse immigration consequences of her guilty plea sooner than four years after entering the plea. Accordingly, the PCR court found Creighton's application, filed four years after she pled guilty, was not timely filed under section 17-27-45(C), and it dismissed the application.[3] This court granted certiorari.

## III.   STANDARD OF REVIEW

---

[3] The PCR court found that Creighton's claims of ineffective assistance of plea counsel under both *Padilla* and pre-*Padilla* law were untimely. Concerning the merits, the PCR court ruled the record did not support Creighton's claim that plea counsel was ineffective under *Padilla*. However, the PCR court did not reach the merits of whether plea counsel was ineffective under pre-*Padilla* law for giving her incorrect advice about the immigration consequences of her guilty plea. On appeal, Creighton argues plea counsel rendered ineffective assistance under pre-*Padilla* law; however, Creighton does not challenge the PCR court's finding that no evidence supported her claim under *Padilla*.

"This [c]ourt gives deference to the PCR judge's findings of fact, and 'will uphold the findings of the PCR court when there is any evidence of probative value to support them.'" *Jordan v. State*, 406 S.C. 443, 448, 752 S.E.2d 538, 540 (2013) (quoting *Miller v. State,* 379 S.C. 108, 115, 665 S.E.2d 596, 599 (2008)). "However, we review questions of law de novo*,* and 'will reverse the decision of the PCR court when it is controlled by an error of law.'" *Id.* (emphasis omitted) (quoting *Goins v. State,* 397 S.C. 568, 573, 726 S.E.2d 1, 3 (2012)).

## IV.    TIMELINESS OF PCR APPLICATION

Creighton argues her PCR application was timely filed pursuant to section 17-27-45(C) because she filed it less than a year after she discovered her guilty plea negatively affected her immigration status. Creighton asserts plea counsel advised her that pleading guilty would not affect her immigration status, and she did not learn plea counsel's advice was erroneous until she consulted an immigration attorney in April 2011. Creighton argues it was a "reasonable exercise of due diligence" to rely on plea counsel's advice until she was informed the advice was erroneous. We agree.

Section 17-27-45(C) provides*,*

> If the [PCR] applicant contends that there is evidence of material facts not previously presented and heard that requires vacation of the conviction or sentence, the application must be filed under this chapter within one year after the date of actual discovery of the facts by the applicant or after the date when the facts could have been ascertained by the exercise of reasonable diligence.

In *Dorman v. Campbell*, this court discussed the interplay between reasonable diligence and the commencement of the statute of limitations.[4] 331 S.C. 179, 184, 500 S.E.2d 786, 789 (Ct. App. 1998). Specifically, we stated,

> The exercise of reasonable diligence means that an injured party must act promptly where the facts and

---

[4] *Dorman* discussed the three-year statute of limitations provided by section 15-3-530 of the South Carolina Code.

circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist. The statute of limitations begins to run from this point, and not when advice of counsel is sought or a full-blown theory of recovery developed. The date on which discovery should have been made is an objective rather than subjective question. Therefore, the statutory period of limitations begins to run when a person could or should have known, through the exercise of reasonable diligence, that a cause of action might exist in his or her favor, rather than when a person obtains actual knowledge of either the potential claim or of the facts giving rise thereto. Moreover, the fact that the injured party may not comprehend the full extent of the damage is immaterial.[5]

*Id*. at 184−85, 500 S.E.2d at 789 (citations omitted).

When no conflicting evidence is presented, the issue of whether particular circumstances would put a person of common knowledge and experience on notice that a right has been invaded or a claim against another party might exist is a question of law. *See Graham v. Welch, Roberts & Amburn, LLP*, 404 S.C. 235, 239−40, 743 S.E.2d 860, 863 (Ct. App. 2013) ("[W]hen conflicting evidence exists on the issue of when a claimant knew or should have known that a cause of action existed, the issue becomes one for a jury to decide."); *id*. ("[T]he determination of the date the statute [of limitations] began to run in a particular case [is a question] of fact for the jury when the parties present conflicting evidence." (quoting *Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 338, 534 S.E.2d 672, 681 (2000))).

In *True v. Monteith*, a former client initiated a legal malpractice action after discovering her attorney had a business relationship with and represented the other party to a long-term commercial lease the attorney drafted. 327 S.C. 116, 118, 489

---

[5] We found no South Carolina cases discussing or defining "reasonable diligence" as it relates to section 17-27-45(C).

S.E.2d 615, 616 (1997). The client initiated the lawsuit twenty years after the lease was executed but within three years of discovering the conflict of interest. *Id.* In discussing whether the client was protected by the discovery rule, our supreme court noted that "[a] client should not be expected to investigate an attorney's loyalty every time the attorney provides the client with counsel the client dislikes." *Id.* at 120, 489 S.E.2d at 617. The court continued, "Instead, absent other facts, the client should be able to rely on the attorney's advice and should be able to follow this advice without fear the attorney is not acting in the client's best interest." *Id.* We find *True* stands for the proposition that a client is protected by the discovery rule when relying on the advice of counsel, "absent other facts" that would put the client on notice that the advice is erroneous. *See also Coats v. State*, 352 S.C. 500, 503–04, 575 S.E.2d 557, 558–59 (2003) (ordering an evidentiary hearing on a PCR application and finding the claim fell within the discovery rule when the application alleged plea counsel erroneously advised the petitioner that he would be parole-eligible and when the application was filed more than a year after the conviction but within a year of the petitioner learning he was not eligible for parole).

Creighton filed her PCR application within one year of her "actual discovery" that plea counsel gave her erroneous information regarding the immigration consequences of her guilty plea. Further, the appendix contains no evidence of any facts that should have led Creighton to believe plea counsel's advice was erroneous—at least not until she met with her immigration attorney. Therefore, we find Creighton is protected by the discovery rule. *See Dorman*, 331 S.C. at 184, 500 S.E.2d at 789 (stating the statute of limitations begins to run when an injured party is presented with facts that "would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist"). We find Creighton exercised reasonable diligence in relying on plea counsel's advice—even though the advice was erroneous—because Creighton was not required to second-guess plea counsel's advice absent facts that would put her on notice that the advice was erroneous.

We hold the PCR court erred in dismissing Creighton's application as untimely. Accordingly, we reverse and remand for a determination on the merits of Creighton's claim that plea counsel provided ineffective assistance under pre-

*Padilla* law.[6]  Because the PCR court already held a full evidentiary hearing in this case, the PCR court need not hold another evidentiary hearing on remand unless it finds sufficient cause to reopen the record for additional evidence.

**REVERSED AND REMANDED.**

**LOCKEMY, C.J., and WILLIAMS and MCDONALD, JJ., concur.**

---

[6] Because the PCR court did not rule on the merits of Creighton's claim that plea counsel provided ineffective assistance under pre-*Padilla* law, we decline to address the merits of that claim.