**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Charleston Laboratories, Inc., Appellant,

v.

Womble, Carlyle, Sandridge & Rice, LLP, Respondent.

Appellate Case No. 2020-000232

———

Appeal From Charleston County
Roger M. Young, Sr., Circuit Court Judge

———

Unpublished Opinion No. 2023-UP-388
Heard September 11, 2023 – Filed December 6, 2023

———

**AFFIRMED**

———

Eric Steven Bland, of Lexington, and Ronald L. Richter, Jr. and Scott Michael Mongillo, both of Charleston, all of Bland Richter, LLP, for Appellant.

Benjamin Rogers Gooding, Jasmine Denise Smith, and Robert E. Stepp, all of Robinson Gray Stepp & Laffitte, LLC, of Columbia, for Respondent.

———

**PER CURIAM:**  This is an appeal of a summary judgment in a legal malpractice case.  Charleston Laboratories, Inc. (Charleston) was the plaintiff below and is the appellant here.  Womble, Carlyle, Sandridge & Rice, PLLC (Womble) was the defendant and is the respondent.

Womble represented Charleston during the early stages of the company's formation and operation.  Charleston claims Womble drafted ambiguous governing documents creating legal uncertainty about whether Charleston properly repurchased company stock from a terminated employee.

Five years after the particular employee and Charleston parted ways, Charleston brought a declaratory judgment action in Florida to clarify the ownership status of those shares.  After winning that case, Charleston filed this case against Womble.  Charleston argues it suffered damages from the alleged malpractice when it had to bring a declaratory judgment action to decide who properly owned the shares.

The circuit court originally denied Womble's motion for summary judgment, but after reviewing a motion for reconsideration and additional briefs received at the court's request, the circuit court found that Charleston's malpractice claim was barred by the statute of limitations.  We agree and affirm.

A claim for legal malpractice has a three-year statute of limitations.  S.C. Code Ann. § 15-3-530(5) (2005); *Stokes-Craven Holding Corp. v. Robinson*, 416 S.C. 517, 525, 787 S.E.2d 485, 489 (2016).  The statute of limitations begins to run when a claimant "knew or by the exercise of reasonable diligence should have known that he [or she] had a cause of action."  S.C. Code Ann. § 15-3-535 (2005).  Under the discovery rule, potential plaintiffs must act with "some promptness" when they are "on *notice* that a claim against another party might exist."  *Graham v. Welch, Roberts & Amburn, LLP*, 404 S.C. 235, 239, 743 S.E.2d 860, 862 (Ct. App. 2013) (emphasis in original) (citation omitted).  When a claimant should have known that a claim against another party might exist is an objective inquiry.  *Id.* (citation omitted).

After a thorough review of the record, we find that, objectively, Charleston knew or should have known that it had a potential claim for legal malpractice at the very latest in July 2012.  One can reasonably identify several earlier dates in the record,[1]

---

[1] Earlier events that could well have started the limitations clock include: (1) a March 2010 email from Womble informing Charleston that the employee in question might resurface after time passes and claim to still own the shares; (2) a series of emails in

but in July 2012, Charleston published a shareholder disclosure that included a note highlighting the disputed ownership of the terminated employee's shares and specifically mentioning the possibility of bringing a declaratory judgment action. Charleston's 30(b)(6) representative further testified that Womble counseled Charleston to file an action asserting its rights to the shares.

The corporate disclosures and the deposition testimony of Charleston's 30(b)(6) representative leave no genuine dispute that Charleston was well aware of the uncertainty surrounding the ownership status of the employee's shares. This disclosure—that Charleston was considering litigation over the uncertainty—was five years before Charleston filed its action against Womble. With inquiry notice of the possible ambiguity created by the documents, Charleston was required to exercise reasonable diligence in investigating whether or not a valid claim against Womble existed.

> [O]nce a reasonable person has reason to believe "that some right of his [or hers] has been invaded or that some claim against another party might exist," the requirement of reasonable diligence to investigate this information further takes precedence over the inability to ascertain the amount of damages or even the possibility that damages may be forthcoming at all.

*Binkley v. Burry*, 352 S.C. 286, 297-98, 573 S.E.2d 838, 844-45 (Ct. App. 2002) (footnote omitted) (quoting *Dorman v. Campbell*, 331 S.C. 179, 184, 500 S.E.2d 786, 789 (Ct. App. 1998))).

We respectfully reject Charleston's argument that it did not incur damages from Womble's alleged malpractice until it incurred fees associated with bringing the declaratory judgment action. There is no serious dispute that paying outside counsel in 2011 to help Charleston "clean the books" and to draft a demand letter to the terminated employee constituted damages for which Charleston could have sued. *See, e.g., Eadie v. Krause*, 381 S.C. 55, 65, 671 S.E.2d 389, 393 (Ct. App. 2008) (quoting *Sims v. Hall*, 357 S.C. 288, 298, 592 S.E.2d 315, 320 (Ct. App. 2003))

---

May 2010 noting that the employee claimed to own up to 90,000 shares and stating that Charleston was "willing to file suit . . . to make the situation right"; and (3) communications with independent counsel in March 2011 again questioning the legal ownership of the shares.

("[T]he defendant may be held liable for anything which appears to have been a natural and probable consequence of his negligence.").

The circuit court's judgment is

**AFFIRMED.**

**HEWITT and VERDIN, JJ., and LOCKEMY, A.J., concur.**