665 S.E.2d 164

**Freddie Vernell LOMAX, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 26525.**

Supreme Court of South Carolina.

Submitted June 26, 2008.

Decided July 28, 2008.

Appellate Defender LaNelle C. DuRant, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Karen Ratigan, of Columbia, for Respondent.

Justice BEATTY:

In this post-conviction relief case, the Court granted certiorari to review the PCR judge's denial of relief for Freddie Vernell Lomax's plea of guilty to multiple drug offenses. In her petition, Lomax's (Petitioner's) sole contention is that the PCR judge erred in failing to find a conflict of interest existed when her plea counsel simultaneously represented both Petitioner and her husband during guilty pleas which arose out of related offenses. We reverse the decision of the PCR judge.

## FACTUAL/PROCEDURAL HISTORY

On August 20, 1997, Petitioner distributed crack cocaine to an undercover officer near a public park in Greenville. Based on this transaction, officers with the Greenville County Sheriff's Department served Petitioner with two arrest warrants for the charges of distribution of crack cocaine and distribution of crack cocaine within a half mile of a public park. The officers proceeded to serve the warrants after they observed Petitioner drive away from her home. After they stopped Petitioner, the officers arrested her and searched her vehicle. This search revealed .58 grams of cocaine and 64.79 grams of crack cocaine.

As a result of the vehicle search, the officers sought to procure a search warrant for Petitioner's home. While waiting for the search warrant, the officers conducted surveillance of Petitioner's home. Shortly after their arrival, the officers observed Noah Lomax, Petitioner's husband (Husband), drive away from the residence. The officers stopped him a short distance from the residence. At that time, he consented to a search of his vehicle. During their search, the officers found 22.47 grams of cocaine, 178.11 grams of crack cocaine, $17,000 in cash, as well as seventeen clear plastic bags.

Subsequently, Husband gave a statement to the officers that he knew his wife was being arrested and he went to their home to remove the drugs and money. As a result of their investigation, the officers executed a search warrant for the couple's home. During the search, the officers discovered quantities of marijuana, crack cocaine, and a mixture of both drugs. Additionally, they discovered $1,369 in cash.

Petitioner was released from jail after serving nineteen days. Less than a month after her release, Petitioner distributed crack cocaine to undercover officers on three separate occasions.

Based on Petitioner's conduct, a Greenville County grand jury indicted Petitioner for the following offenses: four counts of distribution of crack cocaine; distribution of crack cocaine within a half mile of a school or public park; trafficking in crack cocaine in excess of 200 grams, which was later amended to an amount between 28 and 100 grams; possession with intent to distribute cocaine within proximity of a school; trafficking in cocaine; possession with intent to distribute crack cocaine within proximity of a school; possession with intent to distribute marijuana; and possession with intent to distribute marijuana within proximity of a school.

Subsequently, Petitioner and Husband, both represented by the same attorney, simultaneously pled guilty. The solicitor explained to the plea judge that the State intended to present both pleas jointly given the defendants were husband and wife and the facts giving rise to their charges were the same. After engaging in a plea colloquy with Petitioner and Husband individually, the plea judge accepted their guilty pleas as freely and voluntarily given and issued his respective sentences.

Husband pled guilty to possession of marijuana with intent to distribute within proximity of a school and was sentenced to three years' imprisonment. The judge sentenced Petitioner to concurrent terms of ten years on each count of distribution of crack cocaine, ten years for distribution of crack cocaine within proximity of a school, twenty-five years for trafficking in crack cocaine, ten years for trafficking in cocaine, ten years for PWID crack cocaine within proximity of a school, ten years for PWID cocaine within proximity of a school, five years for PWID marijuana, and ten years for PWID marijuana within proximity of a school.

Petitioner did not appeal her guilty plea or sentences. On November 20, 1998, Petitioner filed an application for post-conviction relief. The State filed a Return and requested an evidentiary hearing.

On December 14, 2006, the PCR court held a hearing on petitioner's application.[1] At the PCR hearing, Petitioner's PCR counsel called Petitioner and her plea counsel as witnesses. Petitioner contended she was hurt by plea counsel's representation of both her and Husband at the plea proceeding. Petitioner believed that plea counsel's argument for leniency on behalf of Husband was detrimental to her given that counsel compared her involvement in the crimes to that of Husband. Petitioner also claimed she was prejudiced by plea counsel's dual representation because plea counsel "lingered" more on Husband's case. Petitioner asserted that plea counsel should have focused more on her case because she had confessed to the crimes and was subject to a more severe sentence.

Additionally, Petitioner testified she was informed that she would be tried separately and did not recall ever being asked whether she wanted to waive any conflict of interest and proceed jointly with Husband. Petitioner further stated that had she known the sentence that she would receive by pleading guilty, she would have requested a jury trial.

On cross-examination, Petitioner acknowledged that when she hired plea counsel to represent her for a bond reduction she was aware that counsel was already representing Husband. Petitioner further admitted that she agreed to have plea counsel represent both her and Husband on the indicted offenses.

Plea counsel acknowledged she represented Petitioner and Husband on charges that stemmed from the same incident. Although plea counsel could not remember whether she discussed the conflict of interest issue with Petitioner, she remembered specifically talking to Husband about it. Counsel also stated neither Petitioner nor Husband voiced any objection to the dual representation, but instead, indicated they wanted her to represent them together.

On cross-examination, plea counsel stated her standard practice was to have clients sign a release or a waiver of a

---

1. On May 6, 2002, a circuit court judge erroneously dismissed Petitioner's application on the mistaken belief that she was no longer incarcerated. After Petitioner's application was reinstated, the circuit court conducted the hearing on December 14, 2006.

conflict of interest. However, she could not specifically recall whether Petitioner or Husband had signed such a document. Even if this document had been signed by Petitioner and Husband, plea counsel testified she could not produce it given she had shredded the case file years earlier.

At the conclusion of plea counsel's testimony, the PCR judge inquired whether counsel had favored one client over the other. In response, plea counsel stated:

No. I did spend a lot more time with [Husband] in the beginning because he was—I mean, this guy had had the same job for so many years. He was very close to retirement and they had fired him. So we did—I spent a lot of time with him seeing if there was anything we could do to get his job back.

As far a favoring one over the other, I certainly did not do that. I knew that Petitioner was in more trouble. I was hoping to get [Husband] extricated from the thing altogether. But, I mean, he did give a statement saying that he knew the stuff was there and he had gone to the house to remove it. And I did, on the record, ask that his sentence be reconsidered. I don't know if I, actually, filed it. But, I did ask [the plea judge] to reconsider [Petitioner's] sentence.[2]

At the conclusion of the hearing, the PCR judge denied Petitioner's application. In reaching this decision, the PCR judge found Petitioner was not prejudiced by plea counsel's dual representation because there was "no actual conflict of interest in the matter." In his written order, the PCR judge affirmed his oral ruling and explained his decision. The PCR judge prefaced his analysis with a finding that plea counsel's testimony was credible whereas Petitioner's testimony was not credible. The PCR judge went on to conclude that Petitioner failed to meet her burden of proof that plea counsel was ineffective. In reaching this conclusion, the judge found Petitioner: admitted her guilt at the plea proceeding; acknowledged the facts presented by the solicitor; communicated that she understood the rights she was waiving by pleading guilty; was satisfied with plea counsel's representation; and had not

2. The record indicates that plea counsel only asked the judge to reconsider Husband's sentence.

been coerced in any way to plead guilty. Additionally, the PCR judge specifically held that there was no actual conflict of interest with plea counsel's dual representation of Petitioner and Husband.

This Court granted certiorari to review the PCR judge's denial of Petitioner's application for post-conviction relief.

## DISCUSSION

Petitioner argues the PCR judge erred in failing to find that a conflict of interest existed when her plea counsel simultaneously represented both Petitioner and Husband during guilty pleas which arose out of related offenses. We agree.

A defendant has the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Ard v. Catoe*, 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007), *cert. denied*, —— U.S. ——, 128 S.Ct. 370, 169 L.Ed.2d 247 (2007).

In a PCR proceeding, the applicant bears the burden of establishing that he or she is entitled to relief. *Caprood v. State*, 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000). "In the context of a challenge to a guilty plea, a PCR applicant must establish both that his plea counsel's representation was deficient and that there is a reasonable probability that but for counsel's deficient representation, the applicant would not have pled guilty." *James v. State*, 377 S.C. 81, 83–84, 659 S.E.2d 148, 149 (2008). "In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence at the PCR hearing." *Suber v. State*, 371 S.C. 554, 558, 640 S.E.2d 884, 886 (2007).

"This Court gives great deference to the post-conviction relief (PCR) courts findings of fact and conclusions of law." *Dempsey v. State*, 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005). In reviewing the PCR court's decision, an appellate court is concerned only with whether any evidence of proba-

tive value exists to support that decision. *Smith v. State,* 369 S.C. 135, 138, 631 S.E.2d 260, 261 (2006). This Court will uphold the findings of the PCR court when there is any evidence of probative value to support them, and will reverse the decision of the PCR court when it is controlled by an error of law. *Suber,* 371 S.C. at 558–59, 640 S.E.2d at 886.

 "The Sixth Amendment right to counsel attaches upon initiation of adversarial judicial proceedings and at all critical stages of a criminal trial." *State v. Sterling,* 377 S.C. 475, 479, 661 S.E.2d 99, 101 (2008). "To establish a violation of the Sixth Amendment right to effective counsel due to a conflict of interest arising from multiple representation, a defendant who did not object at trial must show an actual conflict of interest adversely affected his attorney's performance." *Thomas v. State,* 346 S.C. 140, 143, 551 S.E.2d 254, 256 (2001). "An actual conflict of interest occurs where an attorney owes a duty to a party whose interests are adverse to the defendant's." *Staggs v. State,* 372 S.C. 549, 551, 643 S.E.2d 690, 692 (2007). This Court has further stated that an actual conflict of interest occurs:

> when a defense attorney places himself in a situation inherently conducive to divided loyalties. . . . If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.

*Duncan v. State,* 281 S.C. 435, 438, 315 S.E.2d 809, 811 (1984) (quoting *Zuck v. State of Alabama,* 588 F.2d 436, 439 (5th Cir.1979)).

 "The mere possibility defense counsel may have a conflict of interest is insufficient to impugn a criminal conviction." *State v. Gregory,* 364 S.C. 150, 152–53, 612 S.E.2d 449, 450 (2005). Additionally, the fact that counsel does not advise a defendant of the potential conflict of interest does not affect the constitutionality of the conviction. *Jackson v. State,* 329 S.C. 345, 355, 495 S.E.2d 768, 773 (1998). Moreover, the "Rules of Professional Conduct have no bearing on the constitutionality of a criminal conviction." *Langford v. State,* 310 S.C. 357, 360, 426 S.E.2d 793, 795 (1993).

"However, a defendant need not demonstrate preju-
dice if there is an actual conflict of interest." *Gregory,* 364
S.C. at 153, 612 S.E.2d at 450. " 'But until a defendant shows
that his counsel actively represented conflicting interests, he
has not established the constitutional predicate for his claim of
ineffective assistance.' " *Duncan,* 281 S.C. at 438, 315 S.E.2d
at 811 (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct.
1708, 64 L.Ed.2d 333 (1980)).

Applying the above-outlined analytical framework to the
facts of the instant case, we find the PCR judge erred in
denying Petitioner's application for post-conviction relief. As
will be discussed, we hold the PCR judge erred in failing to
find that an actual conflict of interest existed, thus rendering
plea counsel's representation ineffective.

At the PCR hearing, both plea counsel and Petitioner
testified that counsel spent more time preparing Husband's
case despite the fact that Petitioner was pleading guilty to a
majority of the charged offenses and faced a more severe
sentence.

In terms of the conflict of interest, plea counsel acknowl-
edged that she discussed this issue with Husband, but could
not recall specifically talking to Petitioner about such a con-
flict. Plea counsel also admitted that she argued for leniency
in Husband's case and requested the plea judge reconsider his
sentence. In contrast, plea counsel did not make these argu-
ments on behalf of Petitioner. Moreover, Petitioner's and
Husband's interests were adverse to one another given Peti-
tioner pleaded guilty to the majority of the drug charges
whereas Husband pleaded guilty to a single charge of PWID
marijuana within proximity of a school. Significantly, plea
counsel stated at the plea proceeding that Husband was
originally "charged with everything," but she "was able to get
the solicitor who had the case at the time to dismiss all of his
cases." A review of the plea proceeding also reveals that plea
counsel argued for leniency on behalf of Husband by compar-
ing his more limited involvement in the crimes to that of
Petitioner. We believe plea counsel's approach essentially
pitted Husband against Petitioner, which was clearly detri-
mental to Petitioner's interests.

In light of the foregoing, we find Petitioner established that
an actual conflict of interest adversely affected her plea coun-

sel's performance. *See Thomas v. State*, 346 S.C. 140, 143–45, 551 S.E.2d 254, 256 (2001) (holding Petitioner in PCR proceeding demonstrated actual conflict of interest that affected her counsel's performance given counsel jointly represented Petitioner and her husband in a case where solicitor offered a plea bargain that would allow the charge against one spouse to be dismissed if the other spouse would plead guilty to the entire amount of cocaine); *see also Staggs v. State*, 372 S.C. 549, 551–52, 643 S.E.2d 690, 691–92 (2007) (Petitioner in PCR proceeding demonstrated actual conflict of interest that adversely affected counsel's trial performance where his counsel, who represented him on the charge of murder, also simultaneously represented Petitioner's father, mother, and brother on related accessory after the fact of murder charges); *see generally* Allan L. Schwartz, *Circumstances Giving Rise to Conflict of Interest Between or Among Criminal Codefendants Precluding Representation by Same Counsel*, 34 A.L.R.3d 470 (1970 & Supp.2008) (outlining cases which consider what particular circumstances give rise to conflict of interest where single counsel represents multiple codefendants).

Because Petitioner demonstrated an actual conflict of interest, she did not have to demonstrate prejudice in order to be entitled to post-conviction relief. Accordingly, we reverse the decision of the PCR judge.

**REVERSED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.