752 S.E.2d 538

Richard G. JORDAN, Petitioner,

v.

STATE of South Carolina, Respondent.

Appellate Case No. 2010–166367.

No. 27337.

Supreme Court of South Carolina.

Submitted Oct. 15, 2013.

Decided Dec. 11, 2013.

444

Appellate Defender Robert M. Pachak of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Assistant Attorney General Megan E. Harrigan, both of Columbia, for Respondent.

Justice KITTREDGE.

In this post-conviction relief (PCR) case, the Court issued a writ of certiorari to review the denial of Petitioner Richard G. Jordan's application for relief. The PCR court dismissed Petitioner's PCR application, finding Petitioner failed to establish trial counsel had an actual conflict of interest. We reverse and remand to the court of general sessions for a new trial.

## I.

In September 2003, a confidential informant notified law enforcement that Cynthia Summers, Petitioner's then-girlfriend, was manufacturing methamphetamine in a camper in Richland County. The informant did not give an address for the camper but provided directions to it, and police officers promptly began an investigation.

Richland County Investigator Robert Crane was familiar with Summers after previously executing a search warrant for methamphetamine at her home. Investigator Crane followed the informant's directions and was able to locate the camper. Upon arriving at the camper, Investigator Crane realized that

a Richland County evidence technician ("neighbor") lived next door to the suspect camper.

The next morning, officers returned to the location and observed Summers at the camper for approximately forty-five minutes. When Summers departed, the officers conducted a traffic stop. No drugs were found during the traffic stop; however, officers did note that the passenger, Willie Hutchinson, had sores on his arms consistent with chemical burns from the manufacture of methamphetamine.

Law enforcement then interviewed the neighbor. The neighbor informed officers that the camper had an exhaust fan that ran at all times, several propane tanks on the premises, and a great deal of suspicious vehicle traffic. With the neighbor's consent, the officers placed video equipment in the neighbor's home to watch the suspect camper over a period of ten days. Petitioner frequented the camper, and he was the only person seen coming to the camper.

Based on the evidence they had gathered, police officers obtained a search warrant for the camper. During the search, officers found methamphetamine, drug paraphernalia, several firearms, and other items indicative of the manufacture of methamphetamine. Officers secured a second search warrant for a storage room on the premises and discovered an additional 417.3 grams of methamphetamine.

Petitioner was arrested and indicted for possession with intent to distribute methamphetamine and trafficking in methamphetamine. At the suggestion of Summers, Petitioner retained Harry Clayton DePew[1] to represent him on the methamphetamine charges. DePew was then representing Summers on an unrelated Lexington County charge. DePew did not inform the trial court at any time that he represented both Petitioner and Summers.

---

1. In 2002, the Court publicly reprimanded DePew for failing to act diligently on his clients' behalf. *In re DePew*, 350 S.C. 265, 267, 565 S.E.2d 305, 306 (2002). In 2008, DePew was suspended from the practice of law for nine months after pleading *nolo contendere* to unlawfully using his deceased father's name and information in an application for a driver's license. *In re DePew*, 376 S.C. 543, 544, 658 S.E.2d 79, 80 (2008). DePew remains suspended from the practice of law.

At trial, evidence was introduced pointing to Summers' involvement with the methamphetamine lab operation. So strong was the evidence of Summers' involvement that the trial court invited Petitioner to present evidence as to Summers' third-party guilt.[2] DePew, however, did not present any evidence to incriminate Summers, though Petitioner testified at the PCR hearing that he had several witnesses that were prepared to testify as to Summers' guilt. Petitioner was convicted on both charges and sentenced to twenty-five years in prison.

Thereafter, Petitioner sought PCR alleging ineffective assistance of counsel because DePew's dual representation of Petitioner and Summers constituted an actual conflict of interest. During the PCR hearing, Petitioner testified that he was not informed of the conflict of interest, did not waive the conflict of interest, and wanted to present a third-party guilt defense as to Summers. Upon examination by PCR counsel, DePew testified as follows:

Q: And if you could explain to me, did you not feel that there was a conflict in presenting a third-party guilt claim that was based on a current client of yours?

A: I had discussed that with [Petitioner] and [Summers]. They were living together at the time and, as I said, he expressed the opinion that he was aware of everything she was doing. And he even spoke with her about what she was doing in Lexington County.

Q: But, you as his attorney, you took the opportunity to explain to him that their interests were adverse and that a conflict would be there if you were representing her on drug charges and then trying to make her out to be his third-party guilt defense. Did you explain that to him?

---

2. We have imposed limitations on the admissibility of evidence of third-party guilt, "limit[ing] [admissible evidence] to facts which are inconsistent with the defendant's guilt ... [and that] raise a reasonable inference as to the accused's innocence." *Miller v. State*, 379 S.C. 108, 114 n. 2, 665 S.E.2d 596, 599 n. 2 (2008) (quoting *State v. Mansfield*, 343 S.C. 66, 81, 538 S.E.2d 257, 265 (Ct.App.2000)). The trial court found that the evidence of Summers' guilt was inconsistent with Petitioner's guilt, and permitted DePew to pursue a third-party guilt defense.

A: I don't think it was explained in so many words. I mentioned items with him regarding her regarding him [sic], but I do believe he was blinded by love.

Q: Did you put the Court on notice that you had active representation of Ms. Summers at the time you were going to use the third-party guilt claim?

A: No, I did not.

Following the hearing, the PCR judge dismissed Petitioner's PCR application, holding there was no actual conflict of interest and concluding Petitioner failed to show deficient performance and resulting prejudice. Alternatively, the PCR judge found that Petitioner was made aware of all potential conflicts of interest and had waived any such conflicts, though not in writing as required by Rule 1.7(b)(4), RPC, Rule 407, SCACR. In so finding, the PCR judge specifically noted that noncompliance with the Rules of Professional Conduct does not establish constitutionally deficient representation. We granted certiorari to review the PCR court's order.

## II.

This Court gives deference to the PCR judge's findings of fact, and "will uphold the findings of the PCR court when there is any evidence of probative value to support them." *Miller v. State*, 379 S.C. 108, 115, 665 S.E.2d 596, 599 (2008) (citing *Suber v. State*, 371 S.C. 554, 558–59, 640 S.E.2d 884, 886 (2007)). However, we review questions of law *de novo*, and " 'will reverse the decision of the PCR court when it is controlled by an error of law.' " *Goins v. State*, 397 S.C. 568, 573, 726 S.E.2d 1, 3 (2012) (quoting *Lomax v. State*, 379 S.C. 93, 101, 665 S.E.2d 164, 167–68 (2008)).

## III.

Petitioner argues that the PCR judge committed an error of law in failing to find that an actual conflict of interest existed when trial counsel simultaneously represented both Petitioner and Summers. We agree.

"A defendant has the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution." *Lomax*, 379 S.C. at 100, 665 S.E.2d at 167

(citing *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

In a PCR proceeding, the applicant bears the burden of demonstrating that he is entitled to relief. *Miller,* 379 S.C. at 115, 665 S.E.2d at 599. " 'The mere possibility defense counsel may have a conflict of interest is insufficient to impugn a criminal conviction.' " *Lomax,* 379 S.C. at 101, 665 S.E.2d at 168 (quoting *State v. Gregory,* 364 S.C. 150, 152–53, 612 S.E.2d 449, 450 (2005)). Indeed, " 'until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.' " *Id.* at 102, 665 S.E.2d at 168 (quoting *Duncan v. State,* 281 S.C. 435, 438, 315 S.E.2d 809, 811 (1984)).

"To establish a violation of the Sixth Amendment right to effective counsel due to a conflict of interest arising from multiple representation, a defendant who did not object at trial must show an *actual* conflict of interest adversely affected his attorney's performance." *Thomas v. State,* 346 S.C. 140, 143, 551 S.E.2d 254, 256 (2001) (emphasis added) (citing *Jackson v. State,* 329 S.C. 345, 354, 495 S.E.2d 768, 773 (1998)). However, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice to obtain relief." *Staggs v. State,* 372 S.C. 549, 551–52, 643 S.E.2d 690, 692 (2007).

This Court has noted that an actual conflict of interest occurs:

> when a defense attorney places himself in a situation inherently conducive to divided loyalties. If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.

*Duncan,* 281 S.C. at 438, 315 S.E.2d at 811 (internal marks omitted) (quoting *Zuck v. Alabama,* 588 F.2d 436, 439 (5th Cir.1979)); *see also Thomas,* 346 S.C. at 143–44, 551 S.E.2d at 256 ("An actual conflict of interest occurs where an attorney owes a duty to a party whose interests are adverse to the

defendant's.") (citing *Jackson*, 329 S.C. at 354, 495 S.E.2d at 773).

We find that the PCR judge erred in denying Petitioner's PCR application. At the PCR hearing, DePew testified that he was introduced to, and came to represent, Petitioner by way of Summers. DePew was actively representing Summers. While Summers was not charged in relation to this methamphetamine seizure, she was the initial focus of law enforcement's investigation. In fact, the investigation was initiated only upon officers' receipt of a tip naming Summers as the individual manufacturing methamphetamine. Moreover, at trial, the evidence of Summers' guilt was such that the trial judge permitted DePew to proceed on a theory of Summers' third-party guilt, but DePew never pursued this theory. DePew testified at the PCR hearing that he "was trying to throw mud any place [he] could that it would stick." That testimony is fundamentally at odds with DePew's failure to pursue a third-party guilt defense as to Summers.

We find as a matter of law that DePew's concurrent representation of Petitioner and Summers constituted an actual conflict of interest. The effect of this actual conflict of interest is best illustrated by DePew's refusal to pursue a third-party guilt defense as to Summers, especially after being invited by the trial judge to do so. Because of the actual conflict of interest, Petitioner was not required to demonstrate resulting prejudice.

█  Further, we find there is no probative evidence in the record to support the PCR judge's finding that Petitioner waived any potential conflict of interest. The PCR judge cited a correct proposition of law in that the "Rules of Professional Conduct have no bearing on the constitutionality of a criminal conviction." *Langford v. State*, 310 S.C. 357, 360, 426 S.E.2d 793, 795 (1993). Here, however, there is simply no evidence that DePew informed Petitioner or the trial court of his dual representation of Petitioner and Summers, or that Petitioner knowingly, voluntarily, and intelligently waived any potential conflict of interest. *See Thomas*, 346 S.C. at 144, 551 S.E.2d at 256 ("To be valid, a waiver of a conflict of interest must not only be voluntary, it must be done knowingly and intelligently.") (citing *United States v. Swartz*, 975 F.2d 1042, 1048–49

(4th Cir.1992); *Hoffman v. Leeke*, 903 F.2d 280, 289 (4th Cir.1990)). The only evidence at the PCR hearing on this issue was the testimony of both Petitioner and DePew that Petitioner was not informed of the precise nature of the conflict of interest. *See Swartz*, 975 F.2d at 1049–50 (holding that a waiver is not knowing, intelligent, and voluntary unless the defendant knows the precise form of the conflict of interest that eventually results); *Hoffman*, 903 F.2d at 289 ("A defendant cannot knowingly and intelligently waive what he does not know."). We conclude that the PCR court erred in finding that Petitioner waived any conflict of interest. *Cherry v. State*, 300 S.C. 115, 118–19, 386 S.E.2d 624, 625–26 (1989) (holding that a PCR judge's findings will be reversed if there is no probative evidence to support them).

## IV.

We reverse the PCR judge's dismissal of Petitioner's PCR application, and we remand the matter to the court of general sessions for a new trial.

**REVERSED AND REMANDED.**

TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.