**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE
CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Willis Dorsey, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2011-194547

---

**ON WRIT OF CERTIORARI**

---

Appeal From Marion County
Howard P. King, Circuit Court Judge
Thomas A. Russo, Post-Conviction Relief Judge

---

Unpublished Opinion No. 2015-UP-452
Heard April 15, 2015 – Filed September 9, 2015

---

**REVERSED AND REMANDED**

---

Appellate Defender Robert M. Pachak, of Columbia, for
Petitioner.

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General David A. Spencer, both of
Columbia, for Respondent.

---

**PER CURIAM:**  In this appeal from the dismissal of an application for post-conviction relief (PCR), we find plea counsel was ineffective due to an actual conflict of interest that arose when he continued to represent Willis Dorsey and his codefendant, Demetrius Jones, after Jones decided to plead guilty and testify against Dorsey.  We reverse and remand.

## I.    Facts and Procedural History

Following a violent crime spree, Dorsey, Jones, and Cody Waters were indicted for murder, armed robbery, assault and battery of high and aggravated nature (ABHAN), and two counts of possession of a weapon during the commission of a violent crime.  On May 21, 2007, Jones and Waters pled guilty to voluntary manslaughter, armed robbery, and ABHAN.  The State asked the plea court to defer sentencing until after Dorsey's trial because Jones and Waters had "agreed and [were] willing to testify against [Dorsey]."  Henry Anderson represented Jones at the plea hearing.

On May 23, 2008, a year after Jones's and Waters' plea, Dorsey pled guilty to armed robbery, possession of a weapon during the commission of a violent crime, and ABHAN.  The State dismissed the remaining charges.  Anderson represented Dorsey at the plea hearing.  According to the State, it offered to allow one of the codefendants to plead to voluntary manslaughter and armed robbery if he "would tell . . . the truth and be willing to testify."  Dorsey was the first to say he would accept that offer; however, Dorsey fled to Georgia before pleading guilty.

The plea court acknowledged Dorsey and Jones were both represented by Anderson, and the following exchange occurred:

> The Court:  Mister Dorsey, you realize Mister Anderson is also representing Mister Jones.  I don't know, but I don't believe there is any conflict in his representing both of you, but I want to make sure that you don't have any problem with that, the fact that he is representing Mister Jones and you.  Do you have any problem with that?
>
> Mr. Dorsey:  None whatsoever, sir.

> The Court:	All right.  [sic]  And so you would waive
> any conflict that might exist as a result of
> that dual representation.  Is that correct?
>
> Mr. Dorsey:	Yes, sir.

During his mitigation statement for Jones, Anderson stated, "[Jones] is very close friends with [Dorsey] and he didn't want to do it, . . . but he was prepared to testify as to everyone's involvement if that event ever happened."

The plea court sentenced Dorsey concurrently to twenty years' imprisonment for armed robbery, ten years' imprisonment for ABHAN, and five years' imprisonment for the weapon charge.  Dorsey filed a PCR application alleging Anderson was ineffective due to a conflict of interest.

During the PCR hearing, Dorsey asserted a conflict of interest arose because Anderson asked the plea court to defer Jones's sentence so Jones could testify against Dorsey and Anderson should have moved to be relieved as counsel "so that he could represent [Jones]."  Dorsey believed it was a "conflict within itself" for Anderson to advise Jones to testify against Dorsey and continue representing Dorsey.  He admitted the plea court advised him a potential conflict of interest may exist; however, he did not believe he waived any conflict because "[he] was never asked to waive [his] conflict.  [He] was only asked . . . if there was a conflict, would [he] waive it."  Dorsey maintained he did not know that Jones was willing to testify against him or that Anderson asked the plea court to defer Jones's sentencing until after Jones testified against Dorsey.

Anderson testified Dorsey and Jones retained him, and he discussed with them the potential for a conflict at the beginning of the representation.  He informed them he may have to withdraw from representing one of them if a conflict arose, and Dorsey and Jones agreed to waive any potential conflict.  Anderson advised them to plead guilty and testify against Waters, but they decided to go to trial.  Thereafter, Dorsey fled to Georgia and Jones pled guilty.

On cross-examination, Anderson stated he "discussed with [Dorsey] the potential conflict" after Dorsey returned to South Carolina, "made [Dorsey] aware of the conflict if he chose to go to trial," and "gave [Dorsey] a remedy for that in that

[Dorsey] would have had another attorney" if he chose to go to trial.[1]  Anderson did not otherwise explain what he discussed with Dorsey regarding the conflict after Dorsey returned to South Carolina.  Although Dorsey knew Jones pled guilty, Anderson did not know whether Dorsey knew Jones's sentencing was deferred.

The PCR court found Anderson credible and Dorsey not credible.  It denied Dorsey's application for PCR, finding an actual conflict never arose and Anderson "took preventive steps to avoid a potential conflict from prejudicing [Dorsey]."

Dorsey's counsel filed a *Johnson* petition,[2] and this court ordered the parties to brief the issue of whether an actual conflict of interest existed.  Following briefing, this court granted certiorari.

## II.    Actual Conflict

Dorsey argues a conflict of interest arose when Anderson represented Jones "at [Dorsey's] expense by agreeing to have [Jones] testify against [Dorsey]."  We agree.

The burden is on the PCR applicant to prove he is entitled to relief.  *Jordan v. State*, 406 S.C. 443, 449, 752 S.E.2d 538, 541 (2013).  "The mere possibility defense counsel may have a conflict of interest is insufficient to impugn a criminal conviction."  *Id*. (citation omitted).  "[T]o establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."  *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).  A PCR applicant must show counsel "actively represented conflicting interests" to establish the constitutional predicate for a claim of ineffective assistance of counsel.  *Jordan*, 406 S.C. at 449, 752 S.E.2d at 541.

"[T]he Sixth Amendment right to counsel includes the right to effective assistance free of conflicts of interest, and in the case of a single attorney representing multiple defendants, free from conflicting interests among each of the defendants."  *Hoffman v. Leeke*, 903 F.2d 280, 285 (4th. Cir. 1990).  "To establish a violation of the Sixth Amendment right to effective counsel due to a conflict of interest arising

---

[1] Anderson spoke with two other attorneys about representing Dorsey if he went to trial.

[2] *See Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).

from multiple representation, a [PCR applicant] who did not object at trial must show an *actual* conflict of interest adversely affected his attorney's performance." *Jordan*, 406 S.C. at 449, 752 S.E.2d at 541. Appellate courts reviewing an allegation of a conflict of interest "must determine whether there was an actual conflict of interest and, if so, whether that conflict adversely affected [counsel's] representation of [the petitioner]." *Hoffman*, 903 F.2d at 286; *see also United States v. Swartz*, 975 F.2d 1042, 1048 (4th. Cir. 1992) ("[W]e must determine 1) whether [counsel] faced an actual conflict of interest . . . ; and 2) if so, whether that actual conflict resulted in an adverse effect on [counsel's] performance in advancing [the client's] position."). An actual conflict of interest occurs

> when a defense attorney places himself in a situation inherently conducive to divided loyalties. . . . If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.

*Lomax v. State*, 379 S.C. 93, 101, 665 S.E.2d 164, 168 (2008) (alteration in original) (citation omitted).

Once a petitioner shows "a conflict of interest actually affected the adequacy of his representation," he does not need to prove prejudice to obtain PCR relief. *Cuyler*, 446 U.S. at 349-50; *see also Jordan*, 406 S.C. at 449, 752 S.E.2d at 541. "[P]rejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *State v. Sterling*, 377 S.C. 475, 479, 661 S.E.2d 99, 101 (2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984)).

In *Langford v. State*, our supreme court examined whether an actual conflict of interest arose when an attorney represented codefendants at a guilty plea hearing. 310 S.C. 357, 359, 426 S.E.2d 793, 794-95 (1993). Langford and his codefendant, Howard, retained the same law firm to present an alibi defense. 310 S.C. at 358, 426 S.E.2d at 794. However, another codefendant, Todd, pled guilty and produced a recorded conversation wherein Langford implicated himself in the burglaries. 310 S.C. at 358-59, 426 S.E.2d at 794. When Howard learned about the recorded conversation, he decided to plead guilty. 310 S.C. at 359, 426 S.E.2d at 794.

Langford also pled guilty, and "Langford and Howard entered their pleas simultaneously and received identical sentences." *Id.*

Langford later applied for PCR, asserting plea counsel was ineffective for "continu[ing] to represent him after Howard decided to plead guilty without advising him of the dangers of dual representation." 310 S.C. at 359, 426 S.E.2d at 794. The court determined "Langford's attorney never actively represented competing interests," 310 S.C. at 360, 426 S.E.2d at 795, reasoning,

> The possible conflict that developed when Howard decided to plead guilty never ripened into an actual conflict, however, because Langford, fearing that Howard would testify against him, also decided to plead guilty. There is no evidence in the record from which it may be inferred that trial counsel advised either co-defendant to plead guilty in order to obtain more favorable consideration for the other. The mere fact that Howard would be available to testify against Langford does not establish an actual conflict of interest.

310 S.C. at 359-60, 426 S.E.2d at 795.

However, in *Edgemon v. State*, 318 S.C. 3, 5, 455 S.E.2d 500, 501 (1995), our supreme court found an actual conflict of interest arose when evidence showed plea counsel advised Edgemon's codefendant, Brogden, to plead guilty and testify against Edgemon. Citing *Langford*, the court noted "[t]he mere fact that Brogden would be available to testify against [Edgemon] does not establish an actual conflict of interest." *Edgemon*, 318 S.C. at 5, 455 S.E.2d at 500. However, the court found an actual conflict of interest arose because plea counsel advised Brogden to testify against Edgemon prior to Edgemon's guilty plea and failed to negotiate a pretrial intervention program on behalf of Edgemon even though the State promised the program to Brogden. 318 S.C. at 5, 455 S.E.2d at 501.

Likewise, in *Thomas v. State*, 346 S.C. 140, 142, 144, 551 S.E.2d 254, 255-56 (2001), the supreme court determined an actual conflict of interest arose when an attorney represented Thomas and her husband on related drug charges. Before trial, the State offered the following plea bargain:

> [Thomas] and [her h]usband could each plead to trafficking in cocaine in an amount of more than one

> hundred grams and each receive an eight-year sentence[,]
> or either [Thomas or her h]usband could plead to the
> entire amount and receive the mandatory minimum
> sentence of twenty-five years, while the other person
> would be allowed to go free.

346 S.C. at 142, 551 S.E.2d at 255. Thomas pled to the entire amount. 346 S.C. at 143, 551 S.E.2d at 255. The court determined an actual conflict arose the moment the State made the plea offer "because it was in each spouse's best interest for the other spouse to take the entire responsibility for the cocaine." 346 S.C. at 144, 551 S.E.2d at 256. The court reasoned, "At the moment the [State] made the plea offer, [Thomas's and her h]usband's interests became adverse to one another and counsel should have advised them accordingly." *Id.* "Further, counsel acted upon this conflicting loyalty by failing to advise [Thomas] she had nothing to lose by proceeding to trial." *Id.* The court noted counsel could have continued to represent both parties if he had "acquired another waiver covering this specific conflict." *Id.*

Here, we find Anderson's continued representation of Dorsey after Jones agreed to testify against Dorsey constituted an actual conflict of interest that adversely affected Dorsey. The actual conflict arose when Anderson discussed a plea with Jones that included testifying against Dorsey and negotiated on behalf of Jones in a manner that was adverse to Dorsey. By engaging in these conversations, Anderson "place[d] himself in a situation inherently conducive to divided loyalties," creating an actual conflict of interest. *Lomax*, 379 S.C. at 101, 665 S.E.2d at 168.

The State argues Dorsey did not prove an actual conflict existed because the record does not contain evidence showing Anderson advised Jones to testify against Dorsey or negotiated with the State to obtain a more favorable sentence for Jones in exchange for Jones's agreement to testify against Dorsey. However, the specific conversations Anderson had with Jones and the solicitor are irrelevant. The actual conflict is demonstrated by the result of the conversations, which led to a situation where Jones benefitted from agreeing to testify against Dorsey. Anderson engaged in representation that had, as its result, a situation adverse to Dorsey.

Further, we find these facts are distinguishable from *Langford*. The *Langford* court determined "[t]here [was] no evidence in the record from which it may be inferred that trial counsel advised either co-defendant to plead guilty in order to obtain more favorable consideration for the other." 310 S.C. at 359-60, 426 S.E.2d at 795. Here, Anderson continued to represent Dorsey after Jones pled guilty and

agreed to testify against Dorsey. Although Anderson never testified he advised Jones to testify against Dorsey or negotiated with the State to obtain a more lenient sentence for Jones, Anderson was aware Jones would testify against Dorsey if Dorsey proceeded to trial, and the plea court deferred Jones's sentencing because Jones was willing to testify against Dorsey. The logical inference from this evidence is that Anderson advised Jones to testify against Dorsey to receive more favorable sentencing and negotiated with the State on behalf of Jones, to Dorsey's detriment. Thus, we find Anderson represented competing interests, creating an actual conflict that adversely affected Anderson's representation of Dorsey.

## III. Waiver

"[T]he Sixth Amendment right to conflict-free representation, like the right to counsel itself, may be the subject of a waiver." *Swartz*, 975 F.2d at 1048. "To be valid, a waiver of a conflict of interest must not only be voluntary, it must be done knowingly and intelligently." *Thomas*, 346 S.C. at 144, 551 S.E.2d at 256. "The test to be applied in determining whether a fundamental right, such as the right to effective counsel, has been waived is well settled. The state can establish a waiver only by proving an intentional relinquishment or abandonment of the right." *Hoffman*, 903 F.2d at 288. "Whether there has been a waiver depends on the particular facts of each case and the court must make as thorough and long an inquiry as necessary to determine whether the accused is voluntarily, knowingly[,] and intelligently waiving his right." *Id*.

In *Thomas*, our supreme court determined a waiver at the onset of representation was insufficient to waive the actual conflict that arose when the State offered a married couple the option of dismissing one spouse's charges if the other spouse pled guilty to all the charges. 346 S.C. at 142, 144, 551 S.E.2d at 255-56. There, Thomas "was told only that she needed a separate attorney in case she and [her h]usband began to implicate each other, something that never happened." 346 S.C. at 144, 551 S.E.2d at 256. The court held Thomas "should have been given another opportunity to waive the conflict" when the State made the offer. 346 S.C. at 144-45, 551 S.E.2d at 256.

In *Jordan*, our supreme court found the record did not contain probative evidence to support the PCR court's finding that Jordan waived the potential conflict of interest. 406 S.C. at 450, 752 S.E.2d at 541. At the PCR hearing, Jordan testified trial counsel never informed him about the potential conflict of interest and he did not waive any conflict. 406 S.C. at 447, 752 S.E.2d at 540. Trial counsel admitted he never told the trial court about his active representation of Jordan's girlfriend in

unrelated charges. 406 S.C. at 446, 448, 752 S.E.2d at 539-40. When questioned about whether he explained the potential conflict to Jordan, trial counsel replied, "I don't think it was explained in so many words. I mentioned items with him regarding her regarding him, but I do believe he was blinded by love." 406 S.C. at 447-48, 752 S.E.2d at 540. Based on the lack of evidence presented, our supreme court concluded the PCR court erred in finding Jordan waived the conflict. 406 S.C. at 451, 752 S.E.2d at 542.

In *Hoffman*, the U.S. Court of Appeals for the Fourth Circuit determined Hoffman did not knowingly and voluntarily waive a conflict that arose when attorney Long continued to represent Hoffman and his codefendant, Moose, after Moose pled guilty and testified against Hoffman. 903 F.2d at 286-88. The court found the waiver was not knowing and voluntary because

> [n]o one had explained to any of the defendants exactly what is meant by a conflict of interest[,] Hoffman testified that he was not aware that Moose was going to testify against him and implicate him in the murder, and, according to Hoffman, Long never told him that he had advised Moose to testify.

*Id.* at 289.

Here, the evidence does not support a finding that Dorsey knowingly and voluntarily waived the conflict. *See Thomas*, 346 S.C. at 144, 551 S.E.2d at 256 ("To be valid, a waiver of a conflict of interest must not only be voluntary, it must be done knowingly and intelligently."). Although Anderson stated he explained the potential for a conflict of interest at the onset of representation, Anderson did not offer testimony detailing *what* he explained to Dorsey and Jones at the beginning of the representation or what he told Dorsey after Dorsey returned to South Carolina. When questioned specifically about whether Dorsey knew Jones's sentencing had been deferred, Anderson replied, "I'm not sure if he's aware of that or not." Anderson's testimony does not provide sufficient information for this court to find Anderson explained the nature of the specific conflict with Dorsey. Further, the plea court's waiver colloquy did not apprise Dorsey of any actual conflict he was waiving. *See Swartz*, 975 F.2d at 1050 (finding the waiver ineffective where the magistrate who conducted the Rule 44(c)[3] inquiry made

---

[3] Rule 44(c), Fed. R. Crim. P., requires federal courts to inquire into joint representation and advise defendants of their right to separate representation.

statements that "were largely general in nature [and did not] come close to warning [Swartz] of the particular conflict that in fact arose").  Because the record contains no evidence showing Dorsey knew the nature of the actual conflict—that Jones agreed to testify against him—we find the record does not support a finding that Dorsey knowingly and intelligently waived the conflict.  *See Hoffman*, 903 F.2d at 288 ("The state can establish a waiver only by proving an intentional relinquishment or abandonment of the right."); *Jordan*, 406 S.C. at 450-51, 752 S.E.2d at 542 (concluding the PCR court erred in finding Jordan waived the conflict because the record did not contain sufficient evidence showing the wavier was knowing and voluntary); *Thomas*, 346 S.C. at 142, 144, 551 S.E.2d at 255-56 (finding a waiver at the onset of representation was insufficient to waive the actual conflict that arose when the State offered a married couple the option of dismissing one spouse's charges if the other spouse pled guilty to all the charges).

## IV.    Conclusion

We find Anderson actively represented competing interests and his representation adversely affected Dorsey's interests.  Further, we find the evidence does not support a finding that Dorsey waived the conflict of interest.  Thus, we reverse and remand for a new trial.

**REVERSED AND REMANDED.**

**FEW, C.J., and HUFF and WILLIAMS, JJ., concur.**