# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Michael Gonzales, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2015-001553

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Spartanburg County
Roger L. Couch, Post-Conviction Relief Judge

---

Opinion No. 27695
Heard September 21, 2016 – Filed January 5, 2017

---

## REVERSED

---

Appellate Defender Susan Barber Hackett of Columbia,
for Petitioner.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Alicia A. Olive, both of Columbia, for
Respondent.

---

**ACTING JUSTICE PLEICONES:** Petitioner was convicted of trafficking in
400 grams or more of methamphetamine. He was sentenced to thirty years'

imprisonment, and his conviction and sentence were affirmed on direct appeal. *State v. Gonzales*, 360 S.C. 263, 600 S.E.2d 122 (Ct. App. 2004).[1]  Petitioner then filed this post-conviction relief ("PCR") action, arguing his trial counsel had a conflict of interest which adversely affected trial counsel's performance.  The PCR judge denied relief, and in a split decision, the Court of Appeals affirmed the PCR judge's order.  *Gonzales v. State*, 412 S.C. 478, 772 S.E.2d 557 (Ct. App. 2015). Because we find the Court of Appeals erred in affirming the PCR judge's order denying petitioner relief, we reverse the denial of petitioner's application for PCR.

## FACTS

Petitioner, who was a juvenile, lived with his mother and her longtime boyfriend, Dino Perez.  In 2001, at the request of petitioner's mother, trial counsel successfully represented Perez in a drug related forfeiture action.  Less than a year later, in January 2002, petitioner was arrested for trafficking in marijuana over one thousand pounds.  At the request of petitioner's mother, trial counsel agreed to represent petitioner on the trafficking charge.  Three months later, in April 2002, Perez was also arrested for trafficking in marijuana in excess of one thousand pounds.  At the request of petitioner's mother, trial counsel agreed to also represent Perez on his trafficking charge.

In June 2002, petitioner was arrested on the charge of trafficking in methamphetamine—the conviction which petitioner challenged at the PCR proceeding leading to the case now before this Court.  Trial counsel agreed to represent petitioner on the trafficking in methamphetamine charge.  Thus, as of June 2002, trial counsel was simultaneously representing petitioner on his trafficking in marijuana and trafficking in methamphetamine charges, as well as representing Perez on his trafficking in marijuana charge.

One month later, in July 2002, while petitioner's and Perez's respective trafficking in marijuana charges were still pending, petitioner was tried and convicted on his trafficking in methamphetamine charge.  Petitioner received a thirty year sentence, and hired a different attorney to represent him on his direct appeal ("appellate counsel").

---

[1] Later overruled in part by *State v. Gentry*, 363 S.C 93, 610 S.E.2d 494 (2005).

It is uncontroverted that prior to petitioner's July 2002 trial for trafficking in methamphetamine, trial counsel knew: (1) petitioner was a juvenile; (2) petitioner's mother had approached him twice to represent petitioner, and twice to represent Perez; (3) petitioner and Perez had each been arrested on separate charges—trafficking in marijuana in excess of one thousand pounds—in the same geographical area within a three month period; (3) petitioner's mother had paid the $50,000 attorney's fees for representation of both petitioner's and Perez's trafficking in marijuana charges; (4) when petitioner's mother was "trying to find money" to pay the additional $25,000 attorney's fee for petitioner's trafficking in methamphetamine charge, trial counsel discussed with petitioner's mother using the money he had assisted Perez in recovering in his 2001 forfeiture action; (5) a check written from Perez's account for $3,220 was used to pay part of the attorney's fee in petitioner's trafficking in methamphetamine case; and (6) the remainder was paid by J&M Contractors.[2]

Despite all such indicators, trial counsel testified he never recognized the potential for a conflict of interest. Therefore, prior to petitioner's July 2002 methamphetamine trial, trial counsel never discussed with petitioner or Perez the potential for a conflict of interest or sought a waiver by either client. Trial counsel also never discussed with petitioner that his attorney's fees were being paid for by a third-party, and particularly a third-party who may have an adverse interest in petitioner's case.

In 2003, under the advisement of appellate counsel, petitioner agreed to provide federal authorities with substantial information as to Perez's wide-scale trafficking operation in exchange for complete protection from federal prosecution. Subsequently—after petitioner's methamphetamine trial, but while petitioner's and Perez's marijuana charges were still pending—trial counsel was contacted by the United States Attorney's Office regarding his representation of both petitioner and Perez. Specifically, Perez's trafficking charge had become the subject of federal jurisdiction, and trial counsel was contacted by several Assistant United States Attorneys who warned there were allegations of a conspiracy between Perez and petitioner in regards to the pending trafficking charges, and that petitioner was a potential witness in the federal government's case against Perez. The United States

---

[2] At the PCR hearing, trial counsel testified he could not remember if J&M Contractors was affiliated with Perez, petitioner, or petitioner's mother; however, petitioner testified J&M Contractors was affiliated with Perez.

Attorney's Office informed trial counsel that based on the alleged conspiracy, his common representation of Perez and petitioner created a conflict of interest.

Trial counsel withdrew from representation of Perez a short time thereafter. Trial counsel then met with petitioner and explained that if petitioner were cooperating with the federal government on the Perez marijuana investigation, it created a conflict of interest for trial counsel, and petitioner needed to sign a waiver in order for trial counsel to continue representing him. Petitioner denied any dealings with Perez, or meeting with federal agents, but stated he needed to think about signing a waiver.[3] Trial counsel never heard from petitioner again. From Spring 2003 until his formal withdrawal in 2004, the only information trial counsel received as to petitioner was from appellate counsel, who was representing petitioner on a federal material witness warrant in the case against Perez.

In July 2004, trial counsel filed a motion to be relieved as counsel in petitioner's trafficking in marijuana case based on "certain actions undertaken by [petitioner] in his own behalf," causing trial counsel a conflict of interest by "engaging in negotiations . . . interviews, et cetera" with the federal government without consulting with or informing trial counsel. By the time trial counsel confronted petitioner about alleged cooperation with the federal government, petitioner had already provided significant information to federal authorities regarding Perez's business of trafficking in illicit drugs. Perez pleaded guilty to the federal trafficking in marijuana charge.

Appellate counsel was appointed to represent petitioner on the state marijuana charge. She negotiated on petitioner's behalf a five-year concurrent sentence on the reduced charge of trafficking in marijuana 10–100 pounds. Petitioner was sentenced to five years' imprisonment to run concurrently with the sentence for

---

[3] At the PCR hearing, petitioner admitted to "lying" when he told trial counsel after his conviction on the methamphetamine charge that he did not have any connection with Perez; petitioner claims he was not forthcoming because prior to his trafficking in methamphetamine trial, he attempted to inform trial counsel of his connection to Perez, and trial counsel refused to listen. Petitioner further admitted that he was untruthful when he told trial counsel he was not cooperating with the federal government in the case against Perez. Petitioner claims he withheld his cooperation from trial counsel because, in part, he knew trial counsel still represented Perez, and petitioner was scared of Perez both for his sake and his mother's sake.

trafficking in methamphetamine.  Petitioner then brought this PCR action claiming trial counsel had a conflict of interest in representing both petitioner and Perez.

At the PCR hearing, trial counsel was asked whether, once made aware of the conflict of interest, he attempted to file any type of motion on behalf of petitioner to inform the circuit court there may have been a conflict of interest at the time of petitioner's methamphetamine trial.  Trial counsel responded that his remedy was to move to be relieved as counsel on petitioner's marijuana charge.  Trial counsel further explained he did not seek a new trial on the methamphetamine conviction because he did not believe he had a conflict of interest until petitioner became a material witness against Perez, which occurred only after petitioner's methamphetamine trial.

The PCR judge found trial counsel's testimony—that he was unaware of any conflict of interest prior to petitioner's methamphetamine trial—was credible and "supports Counsel's claims that he was not operating under a conflict of interest." Accordingly, the PCR judge found petitioner failed to meet his burden of proving there was a conflict of interest.  The Court of Appeals disagreed with the PCR judge's finding that there was not an actual conflict of interest; however, the Court of Appeals' majority affirmed the PCR judge's denial of relief, concluding petitioner failed to prove trial counsel recognized the conflict, and, therefore, petitioner could not prove he was adversely affected by trial counsel's performance.  *Gonzales v. State*, 412 S.C. 478, 772 S.E.2d 557 (Ct. App. 2015). We granted petitioner's petition for a writ of certiorari to review the decision of the Court of Appeals.

## ISSUE

Did the Court of Appeals err in holding that in order to
prevail on his claim of ineffective assistance of counsel,
petitioner was required to prove trial counsel recognized
an actual conflict of interest?

## ANALYSIS

Petitioner contends the Court of Appeals erred in holding that in order to succeed on his claim of ineffective assistance of counsel, he had to prove trial counsel recognized the existence of an actual conflict of interest.  We agree.

A criminal defendant's Sixth Amendment right to effective assistance of counsel includes a right to counsel "unhindered by a conflict of interest." *Cuyler v. Sullivan,* 446 U.S. 335, 345–50, 355 (1980) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 483 n. 5 (1978)). When counsel is burdened by an actual conflict of interest, he "breaches the duty of loyalty, perhaps the most basic of counsel's duties." *Strickland v. Washington*, 466 U.S. 668, 692 (1984). Due to the seriousness of the breach and the difficulty in "measure[ing] the precise effect on the defense of representation corrupted by conflicting interests," the *Strickland* ineffective assistance of counsel standard is modified in actual conflict of interest cases in that the defendant is not required to show prejudice. *Strickland*, 466 U.S. at 692; *see also Duncan v. State*, 281 S.C. 435, 438, 315 S.E.2d 809, 811 (1984) (quoting *Cuyler*, 446 U.S. at 348). In other words, a defendant is not required to show prejudice in the traditional *Strickland* sense, i.e., that there is a reasonable probability the result of the proceeding would have been different. *Strickland*, 466 U.S. at 692–94 (citing *Cuyler*, 446 U.S. at 345–50). Rather, "prejudice is presumed" if the defendant demonstrates that counsel "'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler*, 446 U.S. at 350); *see also Duncan*, 281 S.C. at 438, 315 S.E.2d at 811 (quoting *Cuyler*, 446 U.S. at 348)); *Lomax v. State*, 379 S.C. 93, 102, 665 S.E.2d 164, 168 (2008). An actual conflict of interest arises where:

> a defense attorney places himself in a situation inherently conducive to divided loyalties. If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.

*Jordan v. State*, 406 S.C. 443, 449, 752 S.E.2d 538, 541 (2013) (quoting *Duncan*, 281 S.C. at 438, 315 S.E.2d at 811 (quoting *Zuck v. Alabama*, 588 F.2d 436, 439 (5th Cir. 1979))). In a PCR proceeding, the applicant bears the burden of proving her attorney had a conflict of interest necessitating relief. *Jordan*, 406 S.C. at 449, 752 S.E.2d at 541.

Generally, this Court gives great deference to the PCR court's findings of fact and conclusions of law. *Miller v. State*, 379 S.C. 108, 115, 665 S.E.2d 596, 599 (2008). However, this Court will reverse the decision of the PCR court when it is controlled by an error of law. *Terry v. State*, 383 S.C. 361, 371, 680 S.E.2d 277, 282 (2009) (citation omitted).

A majority of the Court of Appeals held an actual conflict of interest existed prior to petitioner's trafficking in methamphetamine trial; we agree, and the State does not challenge this assertion.

Notably, several events occurred between trial counsel's representation of petitioner on the trafficking in marijuana charge beginning in January 2002, and petitioner's trafficking in methamphetamine trial in July 2002, that, collectively, demonstrate an actual conflict of interest existed. Those indicators are, *inter alia*: Perez exhibiting an interest in petitioner's case when he paid, at least in part, if not in full, petitioner's attorney's fees; a clear, close connection between petitioner's mother and Perez; petitioner and Perez's arrests for trafficking in marijuana over one thousand pounds in a very short time frame in the same geographical area; and the unlikelihood that a juvenile would act independently when engaging in trafficking over one thousand pounds of marijuana. We find particularly troubling the fact that trial counsel admitted to discussing with petitioner's mother ways in which she could come up with the money to pay petitioner's attorney's fees on the methamphetamine charge, and one of the ways discussed was using the funds recovered in Perez's forfeiture action in which he was represented by trial counsel. *See Wood v. Georgia*, 450 U.S. 261, 268–69 (1981) (finding "inherent dangers [] arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise."). Accordingly, we find the Court of Appeals correctly held an actual conflict of interest existed due to trial counsel's representation of both petitioner and Perez.

However, the Court of Appeals' majority then held, "Although an actual conflict existed, *because trial counsel did not recognize the conflict*, Gonzales cannot demonstrate the conflict affected trial counsel's performance." *Gonzales*, 412 S.C. at 498, 772 S.E.2d at 567–68 (emphasis supplied). We find this assertion—which suggests that only an attorney who intentionally violates his duty of loyalty has a conflict of interest—amounts to an error of law. Stated another way, the Court of Appeals' majority opinion is tantamount to holding that regardless of how

egregious the evidence may be that an actual conflict of interest exists, unless the attorney acknowledges the conflict, it cannot be shown the conflict adversely affected the attorney's performance.  We find that such a holding is contrary to this Court's precedent. *See, e.g.*, *Jordan*, 406 S.C. 443, 752 S.E.2d 538 (2013) (demonstrating trial counsel's testimony stopped short of acknowledging the existence of an actual conflict of interest); *cf. State v. Gregory*, 364 S.C. 150, 153, 612 S.E.2d 449, 450–51 (2005); *Duncan*, 281 S.C. 435, 315 S.E.2d 809 (1984).

While trial counsel's failure to recognize the actual conflict may have resulted in his inability to provide effective assistance of counsel, his recognition of the conflict is not required to show it adversely affected trial counsel's performance. *See Duncan*, 281 S.C. at 438, 315 S.E.2d at 811 (holding in conflict of interest inquires, prejudice is presumed where the defendant demonstrates counsel "actively represented conflicting interests" and that an "actual conflict of interest adversely affected his lawyer's performance" (citations omitted)); *cf. Cuyler*, 446 U.S. at 347 (finding an attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or may develop in the course of a trial (citing *Holloway*, 435 U.S. at 485 (quoting *State v. Davis*, 110 Ariz. 29, 31 (1973)))).

Evidence that the actual conflict of interest adversely affected trial counsel's performance is demonstrated by his failure to advise petitioner as to favorable options he may have otherwise exercised—favorable options appellate counsel successfully negotiated in both the federal and state context.  *Cf. Strickland*, 466 U.S. at 692 (noting the difficulty in "measure[ing] the precise effect on the defense of representation corrupted by conflicting interests."); *United States v. Almany*, 621 F.Supp.2d 561, 569–70 (E.D. Tenn. 2008) (finding where an attorney represents two members of a drug distribution conspiracy, the lack of effort by the attorney to explore his client's potential for a plea agreement or cooperate with the "Government" was, "in itself, strong evidence of a conflict," and noting, "Exploring possible plea negotiations is an important part of providing adequate representation of a criminal client, and this part is easily precluded by a conflict of interest" (citing *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000); *United States v. McLain*, 823 F.2d 1457, 1464 (11th Cir. 1987) (citing *Holloway*, 435 U.S. at 490); *Newman v. United States*, 1998 WL 553048, at *3 (6th Cir. 1998); *Mannhalt v. Reed*, 847 F.2d 576, 582 (9th Cir. 1988); *United States v. Lopez*, 989 F.2d 1032, 1043, *amended and superseded by United States v. Lopez*, 4 F.3d 1455 (9th Cir. 1993); *United States v. Tatum*, 943 F.2d 370, 376 (4th Cir. 1991); *United*

*States v. Balsirov*, 2005 WL 1185810 (E.D. Va. 2005)).  Indeed, a lieutenant involved in the state investigations of petitioner and Perez testified at the PCR hearing that the conflict of interest "absolutely" hindered law enforcement's ability to secure cooperation from petitioner prior to Perez being transferred to federal jurisdiction.  And an Assistant United States Attorney testified there was "no question" had petitioner been available for cooperation before his methamphetamine trial, their office would have appealed to state prosecutors advocating petitioner receive favorable treatment for his extensive cooperation in the Perez investigation.

In conclusion, we hold that regardless whether an attorney recognizes an actual conflict of interest, if the conflict adversely affected the attorney's performance, the applicant has established his entitlement to relief.  Accordingly, we find the Court of Appeals erred as a matter of law in determining that because trial counsel failed to recognize the actual conflict of interest, petitioner could not show he was adversely affected, and that he therefore failed to meet his burden of proof.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the Court of Appeals.

**BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur.**